Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

SAND PRODUCTS, INC., a corporation, Defendant.

Civ. No. 73–144–D.

United States District Court, W. D. Oklahoma, Civil Division.

Dec. 13, 1973.

William J. Kilberg, Sol. of Labor, Alfred G. Albert, Acting Sol. of Labor, Richard L. Collier, Reg. Sol., Dallas, Tex., for plaintiff.

A. D. Howell, Oklahoma City, Okl., for defendant.

MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

The Plaintiff brings this action under the provisions of the Fair Labor Standards Act of 1938 (Act), as amended, 29 U.S.C. § 201 et seq., wherein the Court is asked to enjoin the Defendant from violations of the provisions of Sections 7 and 15(a)(2) (overtime) and Sections

11(c) and 15(a)(5) (record keeping), and to restrain the Defendant from the withholding of any unpaid overtime compensation the Court finds due and owing to certain of its employees.

The case came on for trial before the Court and after hearing the evidence, arguments of counsel and considering suggested findings of fact and conclusions of law submitted by both sides and being fully advised in the premises, the Court makes the following findings of fact, and conclusions of law and decision herein:

The Defendant Sand Products, Inc. is an Oklahoma corporation with principal place of business in Oklahoma City, Oklahoma and is engaged in the business of operating a sand pit and selling sand and has been so engaged since February 26, 1971. Defendant admits that its operations during the period were within the coverage of the Act. Defendant states that it has fully conformed with the requirements of the Act as to all of its admitted employees with one exception and is now in conformity on that exception.

The question before the Court in this litigation is whether certain truck owners-operators (truckers) are employees of the Defendant and under the Act as claimed by the Plaintiff or are independent contractors of the Defendant and not under the Act as claimed by the Defendant. Plaintiff's allegation that such truckers had put in overtime for which they were not compensated is not supported by the evidence as none of the truckers testifying stated that he had worked over 40 hours in any work week. As a result Plaintiff completely failed to support this contention by any evidence and thereupon abandoned his request for a withholding injunction as to unpaid overtime compensation. The Defendant admits that during the period involved it has not maintained payroll records on such truckers. Plaintiff urges that as such truckers are employees of Defendant and as Defendant is covered by the Act, the Court should order Defendant to keep the required records. Also that the Court should find such truckers are employees of the Defendant entitled to be paid straight time and overtime.

Plaintiff called four truckers as witnesses and though their testimony varied in some respects it can be concluded that the relationship between the Defendant and the truckers was generally as follows:

Some truckers have full-time employment elsewhere and do only part-time hauling from Defendant's sand pit. Others do little or no work outside of hauling sand from Defendant's pit. Some do hauling for others. The truckers are free to accept outside hauling. The truckers own their own trucks (or their employers do) and pay all expenses in connection therewith including financing of same, gasoline, oil, repairs, maintenance, license tags and insurance. Each trucker has his own Oklahoma Corporation Commission motor carrier certificate and permit. If a driver is engaged the trucker pays the salary of the driver. Defendant's sales office is open for business from 7:00 a. m. to 5:00 p. m. on Monday through Friday each week. Each trucker can and does appear at the sand pit to haul sand on such days of the week and at such time of the day as he wishes. There is no required hour to report to haul sand. Whether the trucker appears for hauling sand, whether he returns for future hauls and whether he takes coffee breaks or lunch breaks are all matters entirely within the control of each individual trucker. The truckers may come and go at will. The truckers can reject any haul. If an order comes in the Defendant will give a ticket to the next trucker in line on a rotation basis. The Defendant will load the truck. The ticket will show the customer and his address for delivery. The trucker is free to take any route he may wish from the sand pit to the delivery site and any route he may wish to return to the pit. The Defendant gives no instructions as to routes of travel. The customer will direct the place and method of unloading. The truckers perform no tasks for

the Defendant in the way of working at the pit or in its office and receive no compensation for time waiting to haul. The trucker takes off from his work for hours, days or weeks according to his own desires. There is variance in the number of hours a trucker works each day to haul sand and when he would quit each day. Each trucker arranges his own vacation to suit his desire. Each trucker is paid by Defendant according to a tonnage-distance basis and is not paid by the hour. Payments are according to rates fixed by the Oklahoma Corporation Commission. The Defendant makes no profit on the hauling by a trucker. The name or insignia of the Defendant does not appear on any of the trucks. The truckers do no advertising, do not have telephone listings or maintain a place of business except some maintain an office or desk in their homes. The Defendant has no contract right to control the activities, actions, details of his work or the hours or days worked by a trucker and does not in fact exercise any such control. The profit made by a trucker depends on the difference from what he gets for hauling and his cost of operating the truck. The truckers own no part of Defendant's business or its physical plant. His profit is affected by his initiative, his industry, his care and ability in driving, his care and maintenance of his vehicle, and the extent of his investment in the vehicle as it relates to load capacity and the hauls he desires to accomplish. The truckers are not included in the hospital, vacation or other employee plans which the Defendant provides for its admitted employees. There are no written contracts or agreements between Defendant and the truckers. The amount of sand hauled from Defendant's sand pit by these truckers forms a comparatively small part of the sand sales made by the Defendant as most of its sales volume is to wholesale purchasers who send their own trucks to the pit for sand. The Defendant characterized the city sales handled by the truckers as an insignificant part of Defendant's business and that such sales would cease if it is required to treat the truckers as its employees. It would not appear that the services of the truckers constituted an integral part of Defendant's business.

The single issue presented is whether the truckers whom the Defendant engages to transport sand from its pit are "employees" of Defendant within the meaning of the Act or whether they are independent contractors.[1]

In United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) the Supreme Court in considering the Social Security Act found driver-owners of coal delivery trucks operating substantially as the truckers do herein not to be employees but to be independent contractors. Our Circuit in Shultz v. Mistletoe Express Service, Inc., 434 F.2d 1267 (Tenth Cir. 1970), a case involving the Fair Labor Standards Act and the question of whether certain people were employees or independent contractors, made note of United States v. Silk, *supra,* and stated that such decision was "persuasive but not controlling" in Fair Labor Standards Act cases.

The persons in the *Mistletoe* case were found to be employees and not independent contractors but the relationship between the parties was not comparable to that involved here, principally in that in the *Mistletoe* case the employer exercised a considerable measure of control over the details of the employees work and their services were an integral part of Mistletoe's business. Factually speaking the relationship in the case at bar, as above outlined, does not fall be-

1. The relevant statutory provisions are as follows:

29 U.S.C.A. § 203:

"As used in this chapter.

\* \* \* \* \*

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee \* \* \*.

"(e) 'Employee' includes any individual employed by an employer.

\* \* \* \* \*

"(g) 'Employ' includes to suffer or permit to work."

neath the umbrella of the *Mistletoe* ruling.

Rather, the relationship here existing between the truckers and the Defendant is essentially the same as that considered in Goldberg v. Warren Brothers Roads Company, 207 F.Supp. 99 (D.Me. S.D.1962) and Goldberg v. Bellotto, 207 F.Supp. 499 (D.C.Fla.S.D.1962) and Wirtz v. Manchester Sand, Gravel and Cement Co., 236 F.Supp 885 (D.N.H. 1964). In each of these cases the truckers were found to be independent contractors and not employees and therefore not covered by the Act. Though the authors of these cases considered United States v. Silk, *supra*, as being controlling and our Circuit correctly disagrees[2] the cases are nonetheless authority that there can be a relationship of employer and independent contractor in applying the Act,[3] that when such a relationship is found to exist the Act does not apply and authority for finding that the relationship of employer and independent contractor exists as to truckers operating as do those herein.

Goldberg v. Warren Brothers Roads Company, *supra*, employed six tests in determining whether the relationship there existing was that of employer and independent contractor or employer and employee as follows:

"(1) the extent to which the services in question are an integral part of the 'employer's' business; (2) the amount of the 'employee's' investment in facilities and equipment; (3) the nature and degree of control retained or exercised by the 'employer'; (4) the 'employee's' opportunities for profit or loss; (5) the amount of initiative, skill, judgment or foresight required for the success of the claimed independent enterprise; and (6) the permanency and duration of the relationship."

In applying these six tests herein the Court finds and concludes from the evidence that, (1) the truckers are not an integral part of the Defendant's business but are only an insignificant part thereof and the Defendant could easily dispense with their services and still profitably continue in business, (2) the truckers have no investment in Defendant's business or physical plant but only own their trucks which they can and do use elsewhere, (3) the Defendant neither exercises nor has the right to exercise any significant control over the truckers, (4) the truckers' opportunities for profit or loss depends upon their own initiative and skill, (5) the success of the independent enterprise of the truckers depends upon their initiative, skill, judgment or foresight, and (6) the permanency and duration of the relationship between the Defendant and the truckers is not significant as only one of the truckers is still hauling sand from Defendant's pit at the time of the trial. None had hauled for a long period of time.

Applying these tests, which are usually employed in a judicial determination of whether the relationship is that of employer—employee or employer—independent contractor, the Court finds and concludes from the evidence herein that the truckers were not at anytime employees of the Defendant under the Act but were in fact independent contractors and not covered by the Act.

Plaintiff's action should therefore be dismissed without the grant of any relief. An appropriate judgment should be entered herein.

2. Walling v. Portland Terminal Co., 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947); Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

3. *Mistletoe* does not disagree with this.