**Robert W. BAILEY, Jr.**

v.

**The PILOTS' ASSOCIATION FOR the BAY AND RIVER DELAWARE et al.**

Civ. A. No. 73–789.

United States District Court,
E. D. Pennsylvania.

Feb. 6, 1976.

Benjamin E. Zuckerman, Spencer, Sherr & Moses, Norristown, Pa., for plaintiff.

Richard H. Elliott, Clark, Ladner, Fortenbaugh & Young, H. Dawson Penniman, Philadelphia, Pa., for defendants.

OPINION AND ORDER

VanARTSDALEN, District Judge.

FINDINGS OF FACT

1. Plaintiff, Robert W. Bailey, Jr., an individual residing in Blue Bell, Pennsylvania, is a pilot licensed by the Commonwealth of Pennsylvania to engage in pilotage on the Delaware Bay and River.

2. The Defendant Pilots' Association for the Bay and River Delaware is an unincorporated association with an office in Philadelphia, Pennsylvania, whose members engage in the providing of pilotage services in interstate commerce.

3. The purpose of the Association is to provide a convenient means of arranging pilotage services and for collecting fees.

4. The individually named defendants were, at the time this action was commenced, officers and/or directors of the Association.

5. Pennsylvania law requires, *inter alia,* that in order to become a licensed pilot, a person must serve as an apprentice on a pilot boat for four years. 55 P.S. § 41 *et seq.*

6. Plaintiff successfully applied to the Pennsylvania Navigation Commission to become an apprentice and, on July 1, 1968, executed an Agreement of Indenture to his father, Robert W. Bailey, Sr., a first-class pilot, and began serving his apprenticeship on the *M/V Philadelphia,* a pilot boat owned and operated by the Defendant Association.

7. During his periods of duty on the *M/V Philadelphia,* the Plaintiff was under the control and direction of the Defendant Association, its members, agents, or employees.

8. The Plaintiff was paid Five Dollars ($5.00) per month by the Association. Neither the Plaintiff nor the Association contemplated any other compensation to the Plaintiff at the outset of his apprenticeship. The Five Dollars ($5.00) per month was paid to Plaintiff during his time off the *M/V Philadelphia* during 1971 when he made trips with pilots on commercial vessels.

9. While an apprentice pilot, the Plaintiff, served, with certain exceptions for which no recovery is sought, one week on-duty and one week off-duty on the *M/V Philadelphia.* Plaintiff alternated six hours on-duty and six hours off-duty over the course of each week spent on the boat.

10. Plaintiff's duties during the first three years of his apprenticeship were primarily as a motor launch operator—ferrying pilots from the *M/V Philadelphia* to the ships, and a deckman—keeping watch and performing general seaman, deck-hand chores on the boat.

11. In October, 1971, the Plaintiff obtained his federal pilot's license and

thereafter, until June 30, 1972, his duties included being in charge of the watch and maneuvering the *M/V Philadelphia.*

12. As an apprentice, the Plaintiff was counted as a member of the crew toward the legal requirement for a full crew complement.

13. The Plaintiff received minimal supervision and instructions from the Association or its members during his apprenticeship relevant to the duties and skills of a licensed river pilot.

14. The Plaintiff was given time off from serving on the *M/V Philadelphia* to study for his federal and state licenses. No recovery is sought for those periods.

15. The Plaintiff learned the duties and skills of a river pilot by making trips up and down the river accompanying licensed pilots on commercial vessels. The Plaintiff made no trips on the river during his on-duty hours on the *M/V Philadelphia,* nor did the Association arrange for those trips as part of its apprenticeship program.

16. There was some educational benefit to the Plaintiff from serving on the *M/V Philadelphia,* service on a pilot boat was necessary to become licensed by the Commonwealth and the *M/V Philadelphia* was the only boat available for such a purpose. Nevertheless, the Association derived the primary, immediate and substantial benefit from the Plaintiff's work on the pilot boat.

17. The Association operates the *M/V Philadelphia* for a twofold purpose: (1) as a way station for the pilots in going to and coming from ships; (2) to provide an opportunity for apprentices to fulfill the statutory requirements to become a licensed pilot.

18. The Association was not required by law to accept or train apprentices.

19. The Association owns and operates a shore facility at Lewes, Delaware, a lighthouse, which is presently inadequate to fulfill the functions of the *M/V Philadelphia.* An eventual conversion to using a shore station might be more economical than using the pilot boat.

20. The possible application of the minimum wage to the apprentices was discussed by the officers of the Association on several occasions from 1961 until 1973.

21. The Association received inconclusive advice from counsel on the minimum wage question and decided in good faith not to pay the minimum wage scale to apprentices.

22. The Plaintiff was a member of the crew of the *M/V Philadelphia* during his apprenticeship.

23. The Plaintiff's duties on the *M/V Philadelphia,* a registered vessel in navigable waters, were maritime in character.

24. The Association acted primarily for its own benefit and convenience in providing the Plaintiff with a place to sleep because he was required to be on the pilot boat for seven days at a time.

25. The meals provided Plaintiff were primarily for his own benefit.

26. At the rate of $1.60 per hour (the applicable minimum wage rate) for the hours which Plaintiff proved that he worked aboard the *M/V Philadelphia* from April 4, 1970 to June 30, 1972. Plaintiff is entitled to wages in the gross amount of $4,070.40.

27. Plaintiff has not sustained his burden of proving that he worked on certain disputed dates and dates for which no work records were produced.

28. Plaintiff was paid $140 by the Association from April 4, 1970 to June 30, 1972. This amount is to be deducted from the gross amount due Plaintiff.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of the instant action which arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.,* as amended; 28 U.S.C. § 1337.

2. The Defendant Association is liable to the Plaintiff for unpaid minimum wages because the Plaintiff was an "employee" of the Association during his ap-

prenticeship within the meaning of 29 U.S.C. § 203(e).

3. The Defendant Association is not a political subdivision of the state for the purpose of training apprentices. 29 U.S.C. § 203(d).

4. The individually named defendants are not personally liable to the Plaintiff, there being no evidence to support such a finding.

5. The Defendant Association is not liable for overtime compensation because the Plaintiff was employed as a seaman on the *M/V Philadelphia.* 29 U.S.C. § 213(b)(6).

6. The applicable statute of limitations is three years because the violation was willful within the meaning of 29 U.S.C. § 255.

7. The Defendant Association is not liable to the Plaintiff for liquidated damages. 29 U.S.C. § 260.

8. The cost of the sleeping facilities furnished to Plaintiff is not includable as wages.

9. The reasonable cost of the meals furnished Plaintiff by the Association are includable as wages and shall be deducted from $3,930.40, the total amount of wages to which Plaintiff is entitled.

10. The Defendant Association is liable to the Plaintiff for reasonable attorney's fees. 29 U.S.C. § 216(b).

11. The Defendant Association shall pay the costs of this action. 29 U.S.C. § 216(b).

### DISCUSSION

The basic issue presented is whether the defendants were required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* (FLSA) to pay the plaintiff minimum wage and overtime compensation while he was an apprentice-pilot on the *M/V Philadelphia.* According to the FLSA, "employee" is "any individual employed by an employer", and "em-

ploy" means "to suffer or permit to work". 29 U.S.C. § 203(e) and (g).

The Supreme Court interpreted these definitions in *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947), where it was determined that prospective brakemen were not entitled to the minimum wage for the one week of practical training they were afforded by a railroad company.

> The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. . . . The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of "employ" and of "employee" are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.

*Id.* at 152, 67 S.Ct. at 641. The Court considered the facts that the trainee's work did not expedite the company's business and did not displace any regular employees. *Id.* at 150, 67 S.Ct. 639. Thus it must be determined whether the plaintiff was "employed" or was merely offered training so as to come within the *Walling* exception.[1] *See Ballou v. General Electric Co.,* 433 F.2d 109, 112 (1st Cir. 1970).

The test to determine whether an employment relationship exists is one of "economic reality." *Goldberg v. Whitaker House Co-op, Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). To be considered are the circumstances of the whole activity, not merely isolated fac-

---

1. That the FLSA contemplates compensation for apprentices is evidenced by § 214 which provides for payment of less than the minimum wage to trainees and apprentices upon application to the Administrator and issuance of a special certificate. The possible application of § 214 is not at issue in this action.

tors. *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). There are few reported decisions regarding the payment of minimum wages to persons in training. In *Wirtz v. Wardlaw,* 339 F.2d 785 (4th Cir. 1964), the court rejected the defendant's claim that his employees were not entitled to the minimum wage because he was teaching them enough to enable them to determine if they would be interested in careers in the insurance business where their activities were folding, addressing and mailing newsletters and birthday cards. An interesting recent case held that public school students were not entitled to minimum wage compensation for compulsory cafeteria duty because such duty has educational value. *Bobilin v. Bd. of Education,* 403 F.Supp. 1095 (D.Hawaii 1975).

■ The case at bar seems to lie somewhere between *Wardlaw* where the workers were not trainees at all, and *Bobilin* where the dominant role of the plaintiffs was as students. Though it appears that the parties in the instant action did not contemplate compensation for the apprenticeship period, the duties performed by the Plaintiff were of immediate benefit to the Defendant Association. There was evidence that the apprentices substituted for hired men at times and their number was counted toward the full legal complement. In serving as deckman and mate, regularly running a motor launch ferrying pilots to and from commercial vessels and standing watch on the *M/V Philadelphia,* the Plaintiff was not taking a training course but was performing tasks necessary to the functioning of the pilot boat.[2] While it cannot be said that the Plaintiff learned nothing from these activities, most of his training took place on his own time. The Plaintiff had to make all

of his trips accompanying licensed pilots on commercial vessels during his weeks off the *M/V Philadelphia.* Such trips were relevant and vital to learning pilotage but were no part of the Association's apprenticeship program. There was evidence that the Plaintiff was called in to work at times during his vacation or weeks off. The conclusion to be drawn from a consideration of the foregoing factors is that the Plaintiff was an employee of the Defendant Association during his apprenticeship.[3]

■ Any employee "employed as a seaman" is exempt from the overtime pay requirements of the FLSA. 29 U.S.C. § 213(b)(6). The word "seaman" is not defined in the Act. Whether one is a seaman depends upon the work actually performed, not the job title. *Walling v. W. D. Haden Co.,* 153 F.2d 196, 199 (5th Cir.), *cert. denied,* 328 U.S. 866, 66 S.Ct. 1373, 90 L.Ed. 1636 (1946). Three requisites were named in *Robblee v. Aiken Towing Corp.,* 90 F.Supp. 579, 580–81 (N.D.Fla.1950): (1) the person must be a member of the ship's crew; (2) the duties performed must be maritime in character; (3) the duties must be rendered on vessels in navigable waters. Each of these elements is present in the case at bar. The Plaintiff was counted as a member of the ship's crew. His duties of running the motor launches, general maintenance and standing watch were maritime, and the *M/V Philadelphia* was in the navigable waters of the Delaware Bay and River.

A similar standard was set forth in *Walling v. Sternberg Dredging Co.,* 64 F.Supp. 758, 761 (E.D.Mo.) *aff'd,* 158 F.2d 678 (8th Cir. 1946).

[A]n employee should be regarded as employed as a seaman if he performs, as master or subject to the authority,

---

**2.** A helpful analogy can be drawn to recent cases holding that patients in mental institutions are entitled to minimum wage compensation for their non-therapeutic labor. *Weidenfeller v. Kidulis,* 380 F.Supp. 445 (E.D.Wis. 1974); *Souder v. Brennan,* 367 F.Supp. 808 (D.D.C.1973).

**3.** I find no merit in the defendants' contention that the Association is a political subdivision of the state and therefore exempt from the minimum wage requirements under 29 U.S.C. § 203(d).

direction, and control of the master aboard a vessel, services which are rendered primarily as an aid in the operation of such vessel as a means of transportation. . . .

This standard has been adopted in the regulations promulgated by the Wage and Hour Administrator. 29 C.F.R. 783.-31 (1975). The Plaintiff disputes that the *M/V Philadelphia* is a means of transportation. But the evidence establishes that the boat does move, albeit within a limited radius, and it periodically makes trips up and down the Delaware River. Therefore, during his apprenticeship, the Plaintiff was employed as a seaman and, as a result, is not entitled to recover overtime compensation.

### Statute of Limitations

Section 6 of the Portal-to-Portal Pay Act of 1947, 29 U.S.C. § 255, as amended, provides that a cause of action arising under the FLSA must be commenced within two years after the cause of action accrues, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrues. If the two year limit applies, the Plaintiff is entitled to unpaid compensation from April 4, 1971[4] to June 30, 1972.[5] But if the violation was willful, an additional year of wages is recoverable.

■■ The term "willful" applies "to violations which are intentional, knowing or voluntary as distinguished from accidental and it is used to characterize conduct marked by careless disregard . . . ." *Hodgson v. Hyatt*, 318 F.Supp. 390, 392–93 (N.D.Fla.1970). Good faith is not a defense to a willful violation. *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); *Hodgson v. Eunice Superette, Inc.*, 368 F.Supp. 639 (W.D.La. 1973). The test is: "Did the employer know the FLSA was in the picture?" *Coleman, supra* at 1142. Here the Asso-

ciation was aware of the possible applicability of the FLSA. Apprentices had asked about the minimum wage as early as 1961, the officers of the Association had discussed the matter and advice was sought from counsel. In addition, Plaintiff's counsel brought the question to the attention of the Association in 1970. It follows that the applicable statute of limitations is three years because the decision not to pay the Plaintiff the minimum wage was voluntary and intentional, *i. e.*, a willful one.

### Liquidated Damages

■ While good faith is irrelevant to the issue of willfulness, it is relevant to the issue of liquidated damages. An employer who violates the minimum wage provision of the FLSA is liable for the unpaid sums plus an additional amount as liquidated damages. 29 U.S.C. § 216(b). However, the court may, in its discretion, decide not to award liquidated damages if the failure to pay was in good faith and with reasonable grounds to believe that there was no violation of the FLSA. 29 U.S.C. § 260. There is authority for denying liquidated damages where noncompliance was in good faith and was the result of tradition, custom, or industry practice. *Laffey v. Northwest Airlines, Inc.*, 374 F.Supp. 1382, 1390 (D.D.C.1974), *supplemented*, 392 F.Supp. 1076 (D.D.C.1975); *Conwell v. Central Mo. Telephone Co.*, 76 F.Supp. 398, 406 (W.D.Mo.), *aff'd*, 170 F.2d 641 (8th Cir. 1948). The system of apprentice-pilots has existed for many years and serving the apprenticeship without pay is a proudly held tradition among most pilots. There was evidence that the Association had received conflicting advice from counsel on the minimum wage question and an informal consultation with a Department of Labor official was inconclusive. Under these circumstances, the Association has demonstrated that it acted in good faith and that there were reasonable grounds to believe that there was no violation of the

---

4. This action was filed on April 4, 1973.

5. The Plaintiff's apprenticeship ended on June 30, 1972.

FLSA. Accordingly, liquidated damages will not be awarded.

### Deductions

The definition of wage "includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees". 29 U.S.C. § 203(m). Regulations promulgated pursuant to the FLSA point out that facilities furnished primarily for the benefit or convenience of the employer should not be included in computing wages. 29 C.F.R. § 531.-3(d)(1) and (2); § 531.29; § 531.30 (1975). I have found as a fact that the sleeping facilities aboard the *M/V Philadelphia* and a shore-side station were provided primarily for the benefit of the Association because the Plaintiff was required to be on duty for seven days at a time. Thus, lodging is not includable as wages.

However, the reasonable cost of the meals furnished the Plaintiff are includable as wages. "[M]eals are always regarded as primarily for the benefit and convenience of the employee." 29 C.F.R. § 531.32(c) (1975). But the record contains insufficient evidence of the cost of the meals to enable me to make a proper determination. An evidentiary hearing will be necessary on this issue.

### Attorney's Fees

Where a violation of the FLSA is found, the Defendant must pay reasonable attorney's fees and costs of the action. 29 U.S.C. § 216(b). No evidence was presented at the trial concerning the reasonable value of the Plaintiff's attorney's services. Further evidence must, therefore, be taken on this issue also. *Estien v. Christian,* 507 F.2d 61 (3d Cir. 1975); *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.,* 487 F.2d 161 (3d Cir. 1973).

It therefore appears that at the rate of $1.60 per hour, the federal minimum wage in effect at the time of Plaintiff's apprenticeship, Plaintiff's unpaid wages total $4,070.40. I find that the Plaintiff has failed to sustain his burden of proving that he worked during certain times disputed by defendants. During the period for which Plaintiff is entitled to recovery, he was paid $140 by the Association. Therefore, the Association is liable for $3,930.40 minus an as yet undetermined amount for the reasonable cost of the Plaintiff's meals.

To the extent this Discussion states either Findings of Fact or Conclusions of Law not expressly stated in the formal Findings of Fact and/or Conclusions of Law, the same are adopted as such Findings and Conclusions as if expressly so stated under the respective headings.