Ronald NUNNELEY, Appellant,

v.

FARMERS INSURANCE EXCHANGE, A
Reciprocal or Interinsurance Exchange,
et al., Appellees.

No. 49313.

Supreme Court of Oklahoma.

May 10, 1977.

Gatra Marvin, Ungerman, Grabel & Ungerman, Tulsa, for appellees.

Frank R. Hickman, Tulsa, for appellant.

DOOLIN, Justice.

Appellant Nunneley entered into an agreement with appellee Farmers Insurance Exchange (Company) whereby he was to act as an agent for Company selling and renewing insurance policies. Two written agreements executed in 1968 included the following provisions:

"II. The COMPANIES agree that subject to cancellation, as hereinafter provided, they will pay to the AGENT, as a loan, such amount as may be necessary to make the AGENT'S total receipts (consisting of all commissions plus the loan) the sum of $675.00 per month. Payment of said loan may, at the option of the COMPANIES be made in semi-monthly payments, and shall commence as soon as practicable after the expiration of the first semi-monthly period following the effective date hereof, and payments shall thereafter continue for a period of one year in accordance with such rules as may be established by the COMPANIES unless sooner discontinued pursuant to the provisions hereof.

\* \* \* \* \* \*

III. The AGENT shall be obligated to repay to the COMPANIES only 50 per cent of the loan made to him pursuant to Paragraph II hereof, said repayment to be made as follows:

(a) If the AGENT completes the career program and continue as a full time agent he will pay the sum of $20.00 per month commencing eighteen months after the effective date hereof and continuing until paid in full,

(b) If the AGENT ceases to represent the COMPANIES as a full time agent, but continues to represent the COMPANIES on a part time basis, he will pay 25 per cent of the gross amount of his folios commencing with the first folio

after he becomes a part time agent and continuing until paid in full,

(c) Notwithstanding the provisions of Subparagraph (a) and (b) above, upon cancellation or termination of the AGENT'S APPOINTMENT AGREEMENT by either the AGENT or the COMPANIES, the AGENT shall immediately repay the full unpaid balance. The AGENT further agrees that the COMPANIES shall have a first lien in the amount of any unpaid balance, upon any amounts he may at any time be entitled to receive from a nominee."

\* \* \* \* \* \*

"Nothing contained herein is intended or shall be construed to create the relationship of employer and employee; rather, the Agent is an independent contractor for all purposes.

The time to be expended by the Agent is solely within his discretion, and the persons to be solicited and the area wherein solicitation shall be conducted is at the election of the Agent.

The Agent shall, as an independent contractor, exercise sole right to determine the time, place and manner in which he carries out the objectives of this Agreement, provided only that he conform to normal good business practice, and to all State and Federal laws governing the conduct of the Companies and their Agents."

Nunneley terminated his employment in 1970 and in November of that year Company filed the present suit alleging under the above provisions it had loaned Nunneley a total of $2,751.19, half of which, $1,397.58, had not been repaid and was due and owing. Nunneley answered admitting the agreements but denying he was indebted to Company. He alleged amounts advanced to him were not a loan, but rather were paid to him as wages. He cross-petitioned, asserting he as an employee of Company was entitled to be paid the minimum wage under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. (The Act). The Act's declared policy is to insure fair labor standards in industries engaged in commerce between the states. It is not contested Company is engaged in interstate commerce as defined by the Act.[1]

Evidence at trial indicated the amount of commissions Nunneley received, if based on the hours he claimed he actually spent acting as Company's agent, was below the minimum wage requirement in effect during his employment. According to the number of hours worked and the minimum wage in effect at that time, Company owed him a balance of $1,395.98.[2]

The trial court found all issues in favor of Company and awarded it judgment as prayed for.

Nunneley appeals claiming trial court erred in finding he was not an "employee" of Company entitled to the minimum wage under the Act. He does not deny receiving the monies, only the purpose for which he received it. The question presented for review is the applicability of the minimum wage provision of § 203 of the Act to an insurance agent and the company for which he sells.

Contracts between employers and employees if subject to the Act and prohibited by or inconsistent with any of its provisions are illegal and not binding upon employees.[3] A trial court shall not enforce such a contract or grant relief to a plaintiff who must rely on the illegal contract in order to prevail.[4] Thus if it is shown the relationship between Nunneley and Company entitled Nunneley to the minimum wage under the Act, neither the contractual reci-

---

1. See 29 U.S.C. §§ 202, 203, 216(b); *Skelly Oil Co. v. Jackson*, 194 Okl. 183, 148 P.2d 182 (1944).

2. The number of hours Nunneley claimed he worked as Company's agent was an estimate only. He kept no record of actual working hours.

3. *Johnson v. Dierks Lumber and Coal Co.*, 130 F.2d 115 (8th Cir. 1942).

4. *Tatum v. Colonial Life and Accident Insur-*

tations nor the subjective intent of the parties may circumvent the protection of the Act and mandate recovery by Company.[5]

■ A factual finding Nunneley was an *independent contractor* rather than an employee will preclude further inquiry; the Act would not be applicable.[6] If it is found that Nunneley was an *employee* of Company, he still may be exempt from minimum wage requirements if it is determined that he was an "outside salesman" and thus specifically exempt under § 213 of the Act.[7]

Employee is defined by the Act as "any individual employed by employer." [8] This problematic definition requires interpretation in light of the purpose of the Act.

■ The terms "independent contractor," "employer" and "employee" are not to be construed in their common law sense when used in federal social welfare legislation such as the Act; the test is whether as a matter of economic reality the employee is dependent upon employer's business as a means of livelihood.[9] The circumstances of the whole activity must be considered. The total relationship rather than isolated factors are to be ascertained and court must consider if the person's work is an integral part of the operations of Company.[10]

■ An examination of the record here reveals Company exercised control over its agents. Among other things Nunneley was required to maintain specified hours and the area which he was to canvass was established by Company. He was specially trained to act as agent for Company and Company alone. Agents, under the agreement, are not permitted to sell competing or non-competing insurance. From the evidence it appears agents are economically dependent on Company and their activities are an integral part of Company's business. Certainly Company could not operate without their services.[11] Although Nunneley maintained his own office and paid his own expenses, the method and manner in which the office was run was directed by Company rules. We find Nunneley is an employee of Company for purpose of Fair Labor Standards Act, not an independent contractor, regardless of the recitations in the agreement.

However we hold Nunneley is exempt from the minimum wage provisions of the Act as an "outside salesman." 29 U.S.C. § 213(a)(1) provides the minimum wage provisions of § 206 shall not apply with respect to any employees employed in the capacity of "outside salesman" as defined by the regulations of the Secretary of Labor. This regulatory material, defining outside salesmen, is found at 29 C.F.R. §§ 541.5, 541.-500–541.508.

541.5 provides:

> number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities); or * * * "

ance *Company of America*, 465 P.2d 448 (Okl. 1970).

5. *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308 (5th Cir. 1976).

6. *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188 (5th Cir. 1974).

7. 29 U.S.C. § 213 provides:
 (a) The provisions of sections 206 and 207 of this title shall not apply with respect to—
 (1) any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the

8. 29 U.S.C. § 203.

9. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975).

10. *Bailey v. Pilots' Association for Bay & River Delaware*, 406 F.Supp. 1302 (E.D.Pa.1976); *Dunlop v. Dr. Pepper-Pepsi Cola Bottling Co. of Dyersburg, Tenn.*, 529 F.2d 298 (6th Cir. 1976).

11. See *Brennan v. Sand Products, Inc.*, 371 F.Supp. 236 (W.D.Okl.1973).

"The term 'employee employed . . . in the capacity of outside salesman' in section 13(a)(1) of the act shall mean any employee:

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of section 3(k) of the act, or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work."

To be exempt these criteria must be met.

It is recognized the outside salesmen exemption derives from the incompatability of minimum wage requirements with the individual character of the work of such salesmen.[12]

Nunneley was specifically trained for his work. This has been noted by the courts as a factor in support of the view an employee is an outside salesman. The fact Company paid Nunneley on commission basis is further indicia that he qualifies as an outside salesman.[13] Nunneley was "making sales within the meaning of section 3(k) of the Act"; 29 CFR § 541.501(b) specifically includes the sale of insurance. Further Nunneley is customarily and regularly engaged away from Company's office. His sales are made from his office and from calls on his customers.

The only authority discovered relating to the outside salesmen status of insurance company employees is *Wirtz v. Atlantic Life Insurance Co.*, 311 F.2d 646 (6th Cir. 1963). While recognizing insurance agents could be considered outside salesmen, the court found certain employees were not so exempt because they spent more than 20 percent of their workweek in routine office work unconnected with their own outside sales. The above requirements of § 541.-5(2)(b) were not met. Here all of Nunneley's work is incidental to and in conjunction with the sales and solicitations of insurance policies; thus requirements of this subsection are satisfied.

 Therefore we hold Nunneley is employed by Company as an outside salesman who is not subject to the minimum wage requirements of the Act.[14] The contract, if otherwise valid, is enforceable under the Act.

AFFIRMED.

DAVISON, BERRY, BARNES and SIMMS, JJ., concur.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS and IRWIN, JJ., concur in result.

12. *Jewel Tea Co. v. Williams*, 118 F.2d 202 (10th Cir. 1941).

13. *Jewel Tea Co. v. Williams*, id.; *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F.Supp. 1102 (M.D.N.C.1972).

14. See annotation at 26 A.L.R.Fed. 941.