**William BARNICK, Plaintiff,**

v.

**WYETH, et al., Defendants.**

**No. CV 07–3859 SVW (Ex).**

United States District Court,
C.D. California.

Oct. 25, 2007.

---

Darren M. Cohen, Elana R. Levine, Eric B. Kingsley, George R. Kingsley, Kingsley and Kingsley, Encino, CA, Gregory N. Karasik, Ira Spiro, Justian Jusuf, Spiro Moss Barness, Los Angeles, CA, for Plaintiff.

Jason S. Mills, Morgan Lewis and Bockius, Los Angeles, CA, Michael L. Banks, Michael J. Puma, Morgan Lewis & Bockius, Philadelphia, PA, Rebecca D. Eisen, Morgan Lewis & Bockius, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANT WYETH'S MOTION FOR SUMMARY JUDGMENT [20]

STEPHEN V. WILSON, District Judge.

### I. Factual and Procedural Background

This is a uncertified class action by Plaintiff William Barnick ("Plaintiff") against Defendants Wyeth and Does 1 to 50 alleging various wage-related claims. Defendant Wyeth ("Defendant") develops, manufactures, and sells pharmaceutical products. (UF 1) On December 30, 1980, Plaintiff was hired by Defendant to its "sales staff" as a pharmaceutical representative or a "territory manager." (UF 5) The position required "a minimum of 1–2 years of selling experience." (UF 15) The Plaintiff retired from this position voluntarily on February 28, 2006. (UF 78) During the time period relevant to this dispute, Plaintiff worked in Wyeth's vaccine sales division in California. (UF 32) As part of this position, from May 9, 2003 to the end of his employment, Plaintiff visited or called upon physicians on a pre-assigned list he created with Wyeth and discussed with these physicians various Wyeth pharmaceutical products, in particular vaccines Prevnar and FluMist and

drugs Altace and Protonix.(Barnick Dec. at 6; Mills Dec. Ex. 1 at 76–79). In order to perform this work, Plaintiff spent 45–48 hours a week in the field. (UF 17).Plaintiff was required to make a certain number of calls on selected doctors within a set period of time and additionally had a daily quota of calls he was required to make (Barnick Dec. at 6). Plaintiff was also expected to be working at least from 8:30 AM to 5:00 PM on weekdays, but stated in his deposition that no one at Wyeth controlled his hours. (Barnick Dec. at 5; Mills Dec. Ex. 1 at 67) Plaintiff was very rarely subject to any direct supervision, but was required to log his calls with physicians at the end of each working day, file weekly activity reports, check his voice mail three times a day, and computer synchronize once per day. (Barnick Dec. at 6)

Plaintiff's essential function was "to effect sales by educating and guiding health care professionals in their purchase and prescription of Wyeth's products and by promoting treatment practices that are consistent with approved indications." (UF 4) Wyeth expected Plaintiff to generate sales of their product. (UF 36) Plaintiff explained in his declaration that his "primary responsibility was to generate revenue for Wyeth by focusing on visiting specific doctors in my assigned territory to persuade them to prescribe the maximum number of vaccine doses or to prescribe pharmaceutical products to the greatest extent possible; my efforts were not aimed at promoting sales generally." (Barnick Dec. at 5)

Plaintiff did not as a general matter directly sell any Wyeth products to physicians. Occasionally, Plaintiff provided order form's to physicians to use to place orders from Wyeth for vaccines such as Prevnar and FluMist. Sometimes Plaintiff filled these order forms out for the physicians. If he did not have an order form

with him, he gave the physician an 800 number to order vaccine dosages from Wyeth. (UF 50) Physicians would then order the vaccines from Wyeth and prescribe and administer the vaccines to patients directly at the physician's office. (Barnick Decl. at 6) Plaintiff clarifies in his Declaration that he never provided order forms or information for Altace or Protonix. (Barnick Decl. at 8) Altace and Protonix were instead prescribed by physicians to patients who presumably ultimately purchased the drugs through a pharmacy.[1] (Barnick Dec. at 4–5)

Plaintiff was hired as a sales staff member by Wyeth and referred to himself as a salesperson in his deposition. (UF 7, 19–20)[2] Plaintiff was trained in sales techniques at numerous sales conferences throughout his employment where territory managers discussed sales data and sales strategies. (UF 11–13) In addition to a guaranteed yearly salary. Plaintiff received additional compensation tied to the number of sales of Wyeth's products he assisted in generating.[3] (UF 8–10) Half of Plaintiff's total evaluation by Wyeth was based on his meeting sales objectives for Wyeth products. (UF 28) In Wyeth's evaluation of Plaintiff, he was praised for his ability to "consistently close." The evaluation also noted that the Plaintiff "consistently asks for business." (Mills Dec. Ex. 8 at 218). In his deposition, Plaintiff admitted that he "asked for the business" during his calls and this was part of Wyeth's selling strategy (Mills Dec. Ex. 1 at 59). However, in his later decla-

---

1. Parties dispute the amount of time devoted by Plaintiff to providing information about each Wyeth product. Plaintiff alleges based on his own declaration that he devoted 35–40% of his time to providing information on Prevar and FluMist and 60–65% of his time to providing information on Altace and Protonix and other drugs. (Plaintiff Opp. at 3). Defendants argue this assertion is contradicted by Plaintiff's deposition testimony and Barnick's Incentive Compensation Reports which indicate Plaintiff spent 100% of his time selling Prevnar in 2005 and at least 80% of his time selling Prevnar and FluMist through March 2004. (Def.Ev.Obj.6). With regard to the deposition testimony, neither party has attached the relevant page and so the Court is unable to assess whether there is indeed a contradiction. If the declaration genuinely conflicted with prior deposition testimony as opposed to merely clarifying it and the Court considered the conflict to result from a sham, then the Court would be compelled to reject the declaration as to that factual issue. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991). However, it cannot do so without the relevant deposition testimony before it. With regard to the Incentive Compensation Reports, these create a genuine dispute of fact. However, as discussed below, this dispute is ultimately not relevant as Plaintiff's activities with regard to all products should be construed as sales activities.

2. Plaintiff in his subsequent Declaration states that "he did not actually sell Altace or Protonix." (Barnick Decl. at 3). This could be viewed as a contradiction of his prior deposition testimony declaring he sold products. This would counsel its rejection. *See Kennedy* 952 F.2d at 266. However, Plaintiff's declaration is likely best viewed instead as Plaintiff's attempt to speak more precisely about the nature of his various activities than he spoke in his deposition. Nonetheless, Plaintiff's general characterization of his activities in his deposition does have some probative value as to the nature of his position with Wyeth. However, it cannot remotely be viewed as dispositive. *Harris v. Superior Court*, 154 Cal.App.4th 164, 189, 64 Cal. Rptr.3d 547 (Cal.Ct.App.2007) ("A title alone is of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status . . . .").

3. The exact mechanics of how Wyeth tied compensation to sales is unclear from the attached portions of Plaintiff's deposition, but it appears that territory managers' compensation is determined in part by overall sales generated in their territory. (Mills Dec. Ex. 1 at 14)

ration Plaintiff clarifies that he never took any commitments to prescribe Altace or Protonix (Barnick Dec. at 8).[4] Plaintiff did occasionally solicit new business for Wyeth by identifying new doctors in his territory to contact. (Mills Dec. Ex. 1 at 50–52)

Plaintiff filed this suit in California Superior Court on May 9, 2007 as a class action. Plaintiff alleges in his First through Fifth Causes of Action that Defendants failed to pay overtime wages as required by California Labor Code Section 510, failed to provide meal and rest breaks as required by California Labor Code Section 512, failed to itemize wage statements and accurately report total hours worked by Plaintiff in compliance with California Labor Code Section 226(a), and failed to pay waiting time wages under California Labor Code Section 203. In its Sixth Cause of Action, Plaintiff alleges unfair competition pursuant to Business and Professions Code Section 17200. (Plaintiff Comp. at 10–16) Defendant Wyeth removed the suit to federal court under the Class Action Fairness Act of 2005 and filed an answer on June 14, 2007.

Defendant Wyeth filed the present Motion for Summary Judgment on September 17, 2007. Defendant seeks summary judgment with regard to all of Plaintiff's claims on a number of grounds. However, the only ground that needs to be discussed in this memorandum is that Plaintiff was exempt from the relevant requirements of the California Labor Code because he was an "outside salesperson." Defendant's alternative ground that Plaintiff was exempt because his position was predominantly "administrative" need not be reached because Plaintiff's position is properly classi-

fied as that of an "outside salesperson." Additionally, Plaintiff concedes that his Fourth Cause of Action under California Labor Code Section 226(a) is barred by the statute of limitations. (Plaintiff Opp. at 2 fn. 2)

As Plaintiff is properly classified as an exempt outside salesperson and has conceded his Fourth Cause of Action, Defendant's Motion for Summary Judgment should be GRANTED-as to all of Plaintiff's claims.

## II. Analysis

### A. Standard for Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See Id. at 323–34, 106 S.Ct. 2548; Anderson v.

---

4. The Court cannot determine from the excerpted pages of the deposition whether Plaintiff's statements regarding asking for business on calls to doctors were in reference to all calls or merely those relating to vaccines. Without this information, the Court cannot regard Plaintiff's statements on this point as contradicting his later declaration that he never sought commitments to prescribe Altace or Protonix. Therefore, the Court regards Plaintiff's taking of commitments to prescribe Altace or Protonix from physicians as a disputed fact.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001) (the nonmoving party must identify specific evidence from which a reasonable jury could return a verdict in its favor).

### B. *Application of the Outside Sales Exemption*

Under California Labor Code Section 510, an employer is required to pay premium wages to its employees for hours worked in excess of those statutorily required. Cal. Lab.Code § 510. Additionally, under California Labor Code Section 226.7, "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Cal. Lab.Code § 226.7. Under the applicable Industrial Welfare Commission ("IWC") wage order and California Labor Code § 1171, outside salespersons are exempt from statutory overtime and meal and rest period requirements. Cal. Lab.Code § 1171; Wage Order No. 4–2001(1)(C). The determination of whether an employee is an outside salesperson is "a mixed question of law and fact." *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 794, 85 Cal.Rptr.2d 844, 978 P.2d 2 (Cal.1999). Though, as noted above, there is some factual dispute as to the composition of Plaintiff's duties, there is sufficient agreement for the Court to determine as a matter of law that Plaintiff is an exempt outside salesperson. This defeats Plaintiff's First through Third Causes of Action. Furthermore, as Plaintiff's Fifth and Sixth Causes of Action for failure to pay waiting time wages and unfair competition, respectively, are necessarily dependant on the success of the First through Third Causes of Action, Plaintiff's exemption ultimately defeats all his non-conceded claims. *See* Cal. Lab.Code § 203; Bus. and Prof.Code § 17200; *Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178, 107 Cal. Rptr.2d 209 (Cal.Ct.App.2001).

■ An outside salesperson is defined by the IWC as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Wage Order No. 4–2001(2)(M). In classifying workers under the exemption, the Court must apply a "quantitative" approach that looks at whether the employee spends more than fifty percent of his time engaged in sales activities. *Id.* at 797, 978 P.2d 2. "Under California law, exemptions from statutory mandatory overtime provisions are narrowly construed." *Ramirez*, 20 Cal.4th at 795, 85 Cal.Rptr.2d 844, 978 P.2d 2. Furthermore, "the employer bears the burden of proving the employee's exemption." *Id.*

The policy rationale behind the outside salesperson exemption has been somewhat explicated by the California Division of Labor Standards Enforcement ("DLSE") via opinion letter, which noted that outside salespersons generally "set their own time, and they're on the road, they call on their customers ... Rarely [does the employer] know what they're doing on an hour-to-basis." DLSE Op. Letter, Sept. 8, 1998. Hence, it is "very difficult to control their

hours and working conditions." *Id.*[5] The Tenth Circuit discussed the policy behind such exemptions generally:

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works individually, There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates, [sic] In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Jewel Tea Co. v. Williams,* 118 F.2d 202, 207–208 (10th Cir.1941).

There is no dispute that Plaintiff worked away from his employer's place of business more than half his working time. (UF 17–18). Instead, Plaintiff asserts he cannot be classified as an outside salesperson because he did not engage in sales, but instead merely "influence [d] physicians to prescribe Wyeth products." (Plaintiff Opp. at 9) Plaintiff argues that, at least with regard to Altace and Protonix, he did not engage in actual selling as the physicians he spoke to were not the actual purchasers of Wyeth's products. The physicians instead merely prescribed the products to patients who were the ultimate purchasers. Furthermore, Plaintiff denies that he took any commitments from physicians to even prescribe Altace or Protonix.

A Western District of Michigan federal court has identified several indicia relied on by federal courts to support a determination that an employee should be categorized as an outside salesperson:

(1) "[T]he job was advertised as a sales position and the employee was recruited based on sales experience and abilities."

(2) "Specialized sales training"

(3) "Compensation based wholly or in significant part on commissions"

(4) "Independently soliciting new business"

(5) "[R]eceiving little or no direct or constant supervision in carrying out daily work tasks"

*Nielsen v. Devry, Inc.,* 302 F.Supp.2d 747, 756–58 (W.D.Mich.2003). Various federal and state courts have utilized one or more of these indicia in applying the outside salesperson exemption. *See, e.g., Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377, 382–84 (6th Cir.1970); *Wirtz v. Charleston Coca Cola Bottling Co.,* 356 F.2d 428, 429–30 (4th Cir.1966); *Wirtz v. Atlanta Life Ins. Co.,* 311 F.2d 646, 648 (6th Cir.1963); *Jewel Tea Co.,* 118 F.2d at 208; *Palmieri v. Nynex Long Distance Co.,* 2005 WL 767170, at *11–14 (D.Me.2005); *Olivo v. GMAC Mortg. Corp.,* 374 F.Supp.2d 545, 550 (E.D.Mich.2004)'; *Fields v. AOL Time Warner, Inc.,* 261 F.Supp.2d 971, 975 (W.D.Tenn.2003); *Hodgson v. Krispy Kreme Doughnut Co.,* 346 F.Supp. 1102, 1104–07 (D.C.N.C.1972); *Bradford v. Gaylord Products,* 77 F.Supp. 1002, 1004–05 (D.C.Ill.1948); *Nunneley v. Farmers Ins. Exchange,* 564 P.2d 231, 235 (Okla.1977). These indicia were developed for application of the Federal Labor Standards En-

---

**5.** " 'Courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area.' " *Maddock v. KB Homes, Inc.* 2007 WL 2221030, at *9–10 (CD.Cal. July 9, 2007) (quoting *Cicairos v. Summit Logistics, Inc.,* 133 Cal.App.4th 949, 958, 35 Cal.Rptr.3d 243 (2005)).

forcement Act's outside salesperson exemption and not the analogous provision of the California Labor Code at issue here. However, as the California Labor Code was modeled on the FLSA, other courts' interpretation of the FLSA has persuasive authority for this Court's interpretation of the California Labor Code. *Monzon v. Schaefer Ambulance Service, Inc.*, 224 Cal. App.3d 16, 31, 273 Cal.Rptr. 615 (Cal.Ct. App.1990) ("California courts have recognized that California's wage laws are patterned on federal statutes and that the authorities construing those federal statutes provide persuasive guidance to state courts."); *Nordquist v. McGraw–Hill Broadcasting Co.*, 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221 (Cal.Ct.App.1995) ("Because the California wage and hour laws are modeled to some extent on federal laws, federal cases may provide persuasive guidance.").

■ Under these factors, it appears to the Court that Plaintiff clearly qualifies as an outside salesperson. Plaintiff was hired on the basis of his sales experience for a job referred to both by himself and his employer as a sales position. Throughout his employment for Wyeth, Plaintiff received regular specialized sales training at sales conferences. Plaintiff was expected to and did in fact occasionally solicit new business for Defendant. Most significantly. Plaintiff's pay was determined at least in part on the basis of sales he generated. Additionally, Plaintiff, despite certain restrictions placed on his activities by Wyeth, received virtually "no direct or constant supervision in carrying out" his daily work. *Nielsen*, 302 F.Supp.2d at 758. Though the set of physicians Plaintiff contacted was at least in part pre-determined by Defendant and Plaintiff was given daily call quotas, Plaintiff was free to determine from day to day which particular physicians he contacted and when. Similarly, though Plaintiff was required to frequently report his activities to Wyeth, he was almost always unsupervised during his usual working day. Federal courts have found workers subject to daily reporting requirements and call quotas to be sufficiently unsupervised to qualify as outside salespersons. *Krispy Kreme*, 346 F.Supp. at 1104–6; *Fields*, 261 F.Supp.2d at 975; *see also Palmieri*, at *13 ("[T]he caselaw indicates that an employer may impose some controls on the client base—such as relegation to a certain sales territory—without transforming the character of an employee as an outside salesman for purposes of the federal overtime exemption.").

The Western District of Michigan federal court, relying on Department of Labor regulations administering the FLSA, also adopted a further method for determining whether an employee should be categorized as an outside salesperson in close cases:

> In borderline cases the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt.

*Nielsen*, 302 F.Supp.2d at 759 (quoting C.F.R. § 541.504(b)(2)). Other federal courts have also at least implicitly adopted this method for analyzing the outside salesperson exemption under the FLSA. *See, e.g., Ackerman v. Coca–Cola Enterprises, Inc.*, 179 F.3d 1260–1266 (10th Cir. 1999); *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413–14 (5th Cir.1975); *Wirtz v. Keystone Readers Serv., Inc.*, 418 F.2d 249, 260–61 (5th Cir.1969); *Reynolds v. Salt River Valley Water Users Ass'n*, 143 F.2d 863, 868 (9th Cir.1944); *Clements v.*

*Resource Consultants, Inc.* 2006 WL 1579634, at *5 (D.Utah June 2, 2006); *Cuviller v. Alta Colleges, Inc.,* 2003 U.S. Dist. LEXIS 26648, at *3–5 (CD.Cal. Nov. 7, 2003). Applying this method, Plaintiff would clearly be regarded as having engaged in the selling of Prevnar and Flu-Mist, each of which Plaintiff took orders for. However, Plaintiff argues that under this standard he cannot be considered as having sold Altace or Protonix. Plaintiff argues this is the case first because the physicians he called upon were not the ultimate purchasers of Wyeth's products and hence had no ability to consummate any sale. Second, Plaintiff essentially argues that even if the physicians could be regarded as the ultimate purchasers, Plaintiff asserts he never took any commitments from physicians to prescribe Wyeth products and hence never consummated even an indirect sale. (Plaintiff Opp. at 11–12)

The Court first notes that given that every one of the indicia discussed above points to the Plaintiff's categorization as an outside salesperson, the Court does not consider this a "borderline" case prompting this second mode of analysis. However, assuming *arguendo* that the Court does consider this a close case, the Court finds Plaintiff's application of this mode of analysis unpersuasive. With regard to Plaintiff's first contention that physicians are not the ultimate purchasers of Wyeth's products, this is clearly a distinction without a difference. Nothing in the language of the outside salesperson exemption requires an exempted employee to engage in direct as opposed to indirect sales. Though it is true physicians never actually buy Wyeth's prescription products, it is clearly they who control the product's ultimate purchase. Because physicians determine whether or not a patient will buy a prescription product, it is they who are appropriately the target for sales efforts and appropriately considered Wyeth's cus-

tomers. Plaintiff's contrary analysis would produce the absurd conclusion that Wyeth does not engage in any sales activity regarding its prescription products merely because its efforts are rationally aimed at those determining the product's purchase rather than the directed buyers of the product. Furthermore, Plaintiff's characterization of his employment on this basis is entirely divorced from the underlying concerns motivating the exemption; i.e. the commissioned pay received by salespersons and the individual character of their work. The Court cannot endorse such an illogical elevation of form over substance. *See Gina D'Este, et al. v. Bayer Corporation, et al.,* No. 07 Civ. 3206, slip op. at 5 (CD.Cal. Oct. 9, 2007) (relying on similar reasoning to find that a pharmaceutical representative was an outside salesperson appropriately directing her sales efforts at physicians).

The Court finds Plaintiff's second contention similarly unconvincing. Plaintiff appears to assert that though his efforts in speaking to particular physicians about Altace and Protonix were clearly directed at maximizing the products' prescription by those particular physicians, and though he was compensated based on his success in accomplishing this objective, because Plaintiff did not actually request some sort of commitment from physicians during his contact with them he was engaged in only product promotion rather than sales. Though this is likely a correct application of the distinction between promotion and sales laid down by the Department of Labor and several federal courts with regard to the FLSA, the Court simply does not find this definition of sales persuasive and so refuses to apply it to California's outside salesperson exemption. If an employee directs his efforts at persuading a particular customer to purchase a product and is compensated on the basis of his success in doing so then the employee is

 

clearly engaged in sales activity and not mere general promotion of the product. Whether or not the employee at the close of the conversation requests some sort of commitment rather than leaving the customer to make that decision at a later time should not by itself transform the general nature of the employee's efforts from sales to promotion. This is particularly so when, as in the case, it has not been alleged that any other employee will affirmatively make further contact with the customer to consummate the sale. The distinction between sales and promotion is more logically made dependent on whether an employee's efforts are directed at persuading particular individuals to purchase a product rather than the general public and whether an employee is compensated based on the employee's success in securing purchases from particular individuals. This division seems to better comport both with a common understanding of sales work and, more importantly, with the policies behind the outside salesperson exemption. Plaintiff's stated failure to ask for commitments at the end of his calls to physicians does not in any way make the application of the protections of the California Labor Code more appropriate and therefore should not alone bring him within their purview when he would otherwise not be.[6]

### III. Conclusion

As Plaintiff is properly classified as an exempted outside salesperson under the relevant provisions of the California Labor Code and has conceded his Fourth Cause of Action, Defendant's Motion for Summary Judgment should be GRANTED as to all of Plaintiff's claims.

IT IS SO ORDERED.

---

**6.** Plaintiff filed an Application to File a Sur-reply to Defendant's Reply on this Motion on October 19, 2007. The Court does not need to reach this Application as it has reviewed the proposed Sur-reply and determined it would not affect the Court's analysis if admitted. The new cases cited by Plaintiff applying the FLSA outside salesperson exemption have been considered by the Court and found to be unpersuasive for the reasons discussed above. (Plaintiff Sur-rep. at 3–5) Furthermore, the statements made by the Defendant in prior litigation that Plaintiff seeks to admit against Defendant would not change the Court's analysis. Even if regarded as admissible, Wyeth's statements in the prior litigation only assert that pharmaceutical representatives' efforts are not the major factor in determining physicians' prescription choices. (Plaintiff Sur-rep. at 5–6) This is entirely irrelevant as the inquiry under the outside salesperson exemption is what the objectives and duties of the employee in question are, not how effective the employee is in meeting its objectives.