Lynn **MARTIN**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**PARKER FIRE PROTECTION DISTRICT, a Special District, Defendant.**

Civ. A. No. 90–B–1664.

United States District Court, D. Colorado.

Oct. 16, 1991.

S. Lorrie Ray, Office of the Sol., Denver, Colo., for plaintiff.

David C. Hoskins, David C. Hoskins, P.C., Parker, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff Lynn Martin, Secretary of Labor (the Secretary) brings this action alleging defendant Parker Fire Protection District (the District) violated section 6 of the Fair Labor Standards Act of 1938 (the Act), 29 U.S.C. §§ 201 *et seq.*, by not paying four trainees minimum wage while they attended the District firefighter's academy. Cross motions for summary judgment have been filed on the determinative issue of whether the trainees were "employees" under 29 U.S.C. section 203(g). A hearing was held September 19, 1991. Because the trainees were not "employees" under the Act, the District's motion for summary judgment is granted and the Secretary's motion is denied.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The parties are correct that the material facts are not in dispute. Accordingly, I determine which party is entitled to judgment as a matter of law. *Trapper Mining, Inc. v. Lujan*, 923 F.2d 774, 777 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991).

## II. UNDISPUTED FACTS

In 1983, the District began hiring career firefighters as part of a plan to replace volunteer firefighters. Each time the District expanded its career firefighting force or, in some instances, replaced an outgoing firefighter, it went through an extensive test and interview process. In 1989, the District decided to hire four new firefighters. The four top applicants from the interview process, Brian Couzens, John Glenn, James Babylon, and Christopher Major (collectively, the trainees), were sent a letter congratulating them "on being selected to attend the Parker Fire Protection District's Firefighting Academy." Plaintiff's Exhibit 1. The letter also stated: "We feel sure that the District has made the right decision in hiring you, and that you have made the right choice in joining us." *Id.*

Before the trainees could receive any salary from the District, they had to graduate from the District's firefighting academy, which lasted approximately three months. The trainees paid the District $425 to attend the academy and were not paid during the three-month period. The 1989 academy cost the District $18,868.89 to conduct.

The only persons attending the academy were the four persons selected to fill the vacant positions. The academy was conducted only for these trainees.

The purpose of the academy was three-fold: (1) to teach basic fire science; (2) to teach the District's standard operating procedures; and (3) to develop a team spirit and teamwork among the trainees. Because of the importance of developing teamwork and learning the District's procedures, certified and experienced firefighters were nevertheless required to complete the course at the academy.

Training was conducted primarily at District facilities through classroom lectures, demonstrations, drills, physical training, tours, observation of operations, and simulations. The trainees also topped off air bottles, and maintained District equipment.

During their final few weeks at the academy the trainees staffed fire truck 71 and the attendant tanker vehicles, which had previously been staffed by volunteers. The trainees were to be ready to respond with fire truck 71, and to maintain the vehicles and the fire truck's equipment. They were never called into actual service with fire truck 71. However, on one occasion, the trainees were called upon to respond to an auto accident. Along with the trainees, the District sent its normal contingent of firefighters.

## III. THE WAGE & HOUR TEST

The Act defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The term " '[e]mploy' includes to suffer or permit to work." 29 U.S.C. § 203(g). The Act, however, does

not specifically provide whether trainees are employees under the Act.

In *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, 67 S.Ct. 639, 641, 91 L.Ed. 809 (1947), the Supreme Court considered whether railroad brakemen trainees were employees for minimum wage purposes. An applicant for a brakeman position was never hired until he had the preliminary training, which lasted seven or eight days. Trainees first learned routine activities by observation, and were gradually permitted to do actual work under close supervision. Their activities did not displace any of the regular employees, who did most of the work themselves and had to stand by to supervise the trainees. The trainees' work did not expedite the company business, but sometimes actually impeded it. If the trainees completed their course of instruction satisfactorily they were included in a list from which the company could draw when their services were needed. Those who were certified and not immediately put to work constituted a labor pool available to the railroad when needed. *Id.* at 149–50, 67 S.Ct. at 639–40. The Supreme Court held that these trainees were not employees under the Act.

> The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage.... The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of "employ" and of "employee" are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction. Had these trainees taken courses in railroading in a public or private vocational school, wholly disassociated with the railroad, it could not reasonably be suggested that they were employees of the school within the meaning of the Act.

> Nor could they, in that situation, have been considered as employees of the railroad merely because the school's graduates would constitute a labor pool from which the railroad could draw its employees. The Fair Labor Standards Act was not intended to penalize railroads for providing, free of charge, the same kind of instruction at a place and in a manner which would most greatly benefit the trainees.

> Accepting the unchallenged findings here that the railroads receive no "immediate advantage" from any work done by the trainees, we hold that they are not employees within the Act's meaning.

*Id.* at 152–53, 67 S.Ct. at 641–42.

To determine whether a trainee is an employee under the Act, the Wage and Hour division of the Department of Labor applies the following test derived from *Portland Terminal:*

> Whether trainees are employees under the Act, according to the WH Administrator, will depend upon all the circumstances surrounding their activities on the premises of the employer. If all six of the following criteria apply, the trainees are not employees within the meaning of the Act:
>
> ● the training, even if it includes actual operation of the facilities of the employer, is similar to that which would be given in vocational school;
> ● the training is for the benefit of the trainees;
> ● the trainees do not displace regular employees, but work under close observation;
> ● the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;
> ● the trainees are not necessarily entitled to a job at the completion of the training period; and
> ● the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

Wage & Hour Manual (BNA) 91:416 (1975).

The Secretary contends that unless all six criteria are met, a trainee is an employ-

ee. Because this is an unreasonable construction of the test on its face and in light of controlling case law, I decline to adopt it.

The Wage & Hour test provides that "[i]f all six ... criteria apply, the trainees are not employees within the meaning of the Act." *Id.* The Secretary reads this to state the converse: that if all six criteria do not apply, the trainees are employees. To the contrary, the test plainly and unambiguously states that "[w]hether trainees are employees under the Act ... *will depend upon all the circumstances* surrounding their activities." *Id.* (emphasis added). However, under the Secretary's interpretation, the determination of whether trainees are employees would not depend upon all of the circumstances. Instead, the Secretary would deem a trainee an employee if but one criterion was not met with no consideration of the other criteria. This interpretation is therefore inconsistent with the test read as a whole. *See McLaughlin v. Ensley,* 877 F.2d 1207, 1211 (4th Cir.1989) (Wilkins, J., dissenting) (Wage and Hour test does not "rely exclusively on a single factor, but instead requires consideration of all the circumstances").

Moreover, in the Tenth Circuit, the determination of whether someone is an employee under the Act is "based upon a totality of the circumstances." *Dole v. Snell,* 875 F.2d 802, 805 (10th Cir.1989). The Secretary's interpretation conflicts with this rule.

Accordingly, I conclude that the Secretary's construction of the Wage & Hour test is unreasonable and I decline to adopt it. *See Department of Labor v. Occupational Safety & Health Review Comm'n,* 938 F.2d 1116, 1119 (10th Cir.1991) (agency's unreasonable interpretation of its own regulation not adopted); *cf. Chapman v. United States Dep't of Health & Human Services,* 821 F.2d 523, 527 (10th Cir.1987) (agency's unreasonable interpretation of statute that it is entrusted to administer should not be adopted).

Although I do not accept the Secretary's interpretation of the test, it is appropriate and helpful to consider its factors in determining whether, under the totality of the circumstances, a trainee is an employee under the Act. However, because the Supreme Court in *Portland Terminal* considered whether the employer derived "immediate advantage" from work done by the trainees to be particularly important, *Portland Terminal,* 330 U.S. at 153, 67 S.Ct. at 642, this factor may be given added weight.

## IV. APPLICATION OF THE WAGE & HOUR TEST

### A. Is The Training Similar To Vocational School?

The evidence shows that the training conducted was similar to that which would be given in vocational school. *See* Couzens Deposition, 45–48; Qualman Deposition 64–65; Qualman Affidavit at 5. This factor favors the District.

### B. Is The Training For The Benefit Of The Trainee?

The trainees learned basic firefighting science, District operating procedures, and teamwork skills. These skills benefitted the trainees who learned not only basic firefighting skills, but also the skill and knowledge required to be a firefighter for the District. *See Donovan v. American Airlines, Inc.,* 686 F.2d 267, 272 (5th Cir. 1982). Accordingly, this factor also favors the District.

### C. Do The Trainees Displace Regular Employees?

Here, the trainees did not displace any paid firefighters, although for a few weeks at the end of their training, they displaced volunteers. This factor favors the District because "regular employees" as used by the Court in *Portland Terminal* does not refer to volunteers.

### D. Does The Employer Derive Immediate Advantage From The Trainees?

For the most part, the trainees did nothing that immediately benefitted the District. Rather, they engaged in training activities that cost the District a substantial amount of money. Even when the

trainees responded to the car accident, the District did not benefit because its normal response was not otherwise obviated. *See Portland Terminal*, 330 U.S. at 149–50, 67 S.Ct. at 639–40 (employer did not benefit from trainees doing work because trainees did not displace regular employees). Benefit, if any, to the District from this isolated incident is de minimis under the Act. *See Atkins v. General Motors Corp.*, 701 F.2d 1124, 1129 (5th Cir.1983).

Although for a short time the trainees staffed a fire truck that had been staffed by volunteers, there is no evidence that the District benefitted because the fire truck had previously been staffed without the expenditure of District funds. Moreover, there is no evidence that the trainees were more effective firefighters than the volunteers or that the volunteers went on to perform other District functions. Accordingly, on balance, this factor favors the District.

E.   Are The Trainees Entitled To A Job At The Completion Of Training?

Because the trainees were entitled to a job upon successful completion of training, this factor favors the Secretary.

F.   Did The Parties Understand That The Trainees Were Not Entitled To Wages?

This factor favors the District.

## V.   CONCLUSION

All of the factors, except one, support a determination that the trainees were not employees under the Act. Moreover, it is significant that the District derived no "immediate advantage" from the trainees. Although the employees were entitled to jobs upon successful completion of the training, this factor, standing alone, does not make the trainees "employees." Under the totality of the circumstances, I conclude that the trainees were not "employees" under the Act.

Accordingly, it is ORDERED that:

(1) the District's motion for summary judgment is GRANTED;

(2) the Secretary's cross motion for summary judgment is DENIED; and

(3) final judgment shall enter for the District and against the Secretary, the parties to bear their own costs.