**Robert B. REICH, Secretary of Labor, United States Department of Labor,*** Plaintiff–Appellant,

v.

**PARKER FIRE PROTECTION DISTRICT, a Division of Parker city government, Defendant–Appellee.**

No. 91–1425.

United States Court of Appeals, Tenth Circuit.

March 22, 1993.

Order on Denial of Rehearing and Rehearing En Banc May 28, 1993.

---

* Robert B. Reich, appointed after this appeal was heard, has been substituted for former Secretary of Labor Lynn Martin.

Joan Brenner, Attorney (Marshall J. Breger, Solicitor of Labor, Monica Gallagher, Associate Solicitor, Tedrick A. Housh, Regional Solicitor, William J. Stone, Counsel for Appellate Litigation, with her on the brief), U.S. Dept. of Labor, Washington, DC, for plaintiff-appellant.

David C. Hoskins, Parker, CO, for defendant-appellee.

Before LOGAN, ANDERSON and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff, the Secretary of Labor, brought suit against defendant Parker Fire Protec-

tion District under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, seeking to recover minimum wages that it alleged were due to four firefighters for the time they spent in training at the firefighting academy conducted by defendant in 1989. The district court granted summary judgment in favor of defendant, holding that these men were not employees, *Martin v. Parker Fire Protection Dist.,* 774 F.Supp. 1301 (D.Colo.1991). The Secretary has appealed. The only issues on appeal are the proper test for distinguishing between trainees and employees under FLSA, how strictly we should apply a six factor enumeration developed by the Department of Labor's Wage and Hour Division, and whether the district court properly granted summary judgment for defendant.

## I

In 1983, defendant began hiring career firefighters to replace its volunteer force. Prospective firefighters seeking employment with defendant had to submit applications and pass an initial screening before taking a written test. High scorers on the written examination were then tested physically. Candidates who performed satisfactorily on the physical test were further screened by oral interviews. Finally, a limited number of interviewees were selected to attend the firefighting academy. Permanent employment as a firefighter was conditioned upon satisfactory completion of the ten week long training period. Because only the number expected to be hired were sent to the academy, those who successfully completed the course had every reasonable expectation of being hired, as in fact they were in this case. Trainees understood that although they could obtain loans from defendant during this time, they were not entitled to wages for the time they spent at the academy.

Defendant required attendance at its academy not only to ensure that its firefighters knew basic fire science and defendant's standard operating procedures, but also to build a sense of teamwork and cooperation among the incoming firefighters. Even certified and experienced firefighters had to complete instruction at the academy before going to work for defendant. The academy curriculum included classroom lectures, tours of the district, demonstrations, physical training, and simulations. Trainees also maintained defendant's equipment. During the final weeks of the 1989 academy, the four trainees in question staffed a truck that had previously been attended by volunteers. Although they were never called into service, they maintained the truck and its equipment in a state of readiness. On one occasion, while returning from a training exercise, the trainees responded to a car accident and provided paramedical services.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review a decision on summary judgment de novo, using the same standard applied by the district court. Furthermore, "the ultimate determination of employee status is a finding of law subject to *de novo* consideration by this court." *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1045 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987).

## II

■ The FLSA itself provides little guidance in distinguishing between trainees and employees. The Act defines employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "'[e]mploy' includes to suffer or permit to work." *Id.* § 203(g). To give content to this very broad statutory language, using factors first articulated in the Supreme Court's landmark decision in *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947), the Department of Labor's Wage and Hour Division has developed a test listing six criteria for determining whether trainees are employees within the meaning of FLSA. Both parties agree that this test is the proper standard to apply here. It provides:

Whether trainees are employees under the Act, according to the WH Administrator, will depend upon all the circumstances surrounding their activities on the premises of the employer. If all six of the follow-

ing criteria apply, the trainees are not employees within the meaning of the Act:

&ast; The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school[.]

&ast; The training is for the benefit of the trainee[.]

&ast; The trainees do not displace regular employees, but work under close observation[.]

&ast; The employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded[.]

&ast; The trainees are not necessarily entitled to a job at the completion of the training period[.]

&ast; The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

Wage & Hour Manual (BNA) 91:416 (1975). The parties disagree, however, over how this test is to be applied. At oral argument counsel for the Secretary denied that we are bound absolutely to an all or nothing standard. Nevertheless, the essence of the Secretary's argument is that unless all six criteria are met, the trainees are employees for purposes of FLSA. Defendant argues that, as a true "totality of the circumstances" test, this determination should not turn on the presence or absence of one factor in the equation.

█ Neither the six factor test nor the Secretary's understanding of how it is to be applied are to be given the high level of deference accorded to agency regulations under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Proper judicial treatment of nonregulatory guidelines, recently reaffirmed in *EEOC v. Arabian Am. Oil Co.,* —— U.S. ——, ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991), was first articulated in a wage and hour case under FLSA:

We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

The six criteria in the Secretary's test were derived almost directly from *Portland Terminal* and have appeared in Wage and Hour Administrator opinions since at least 1967. Several courts have referred to this test and conducted their analyses of employment status according to its standards. *See Atkins v. General Motors Corp.,* 701 F.2d 1124, 1127 (5th Cir.1983); *Donovan v. American Airlines, Inc.,* 686 F.2d 267, 273 n. 7 (5th Cir.1982); *Marshall v. Baptist Hospital, Inc.,* 473 F.Supp. 465, 478 (M.D.Tenn.1979), *rev'd on other grounds,* 668 F.2d 234 (6th Cir.1981). Other courts have used elements of this test in applying *Portland Terminal* directly. *See McLaughlin v. Ensley,* 877 F.2d 1207, 1209 n. 2 (4th Cir.1989); *Wirtz v. Wardlaw,* 339 F.2d 785, 787–88 (4th Cir. 1964); *Bailey v. Pilots' Ass'n for the Bay and River Delaware,* 406 F.Supp. 1302, 1306 (E.D.Pa.1976). Similarly, numerous letter opinions of the Wage and Hour Administrator indicate that the Department of Labor has consistently responded to inquiries concerning trainees' employment status by applying this test. *See, e.g.,* Op.Wage–Hour Adm'r No. 1067 (March 31, 1970); Op.Wage–Hour Adm'r No. 1001 (June 9, 1969; Op. Wage–Hour Adm'r No. 533 (Dec. 2, 1966).

Nevertheless, following *Skidmore* we find little support for as strict an application of this test as the Secretary urges before us. Although we do not doubt that the Secretary thoroughly considered her position, we believe that the position she urges upon us is inconsistent with prior Wage and Hour Division interpretations and opinions. Moreover, there is nothing in *Portland Terminal* to support an "all or nothing" approach. The prefatory language to the Secretary's test

itself makes clear that the six factors are meant as an assessment of the totality of the circumstances. "Whether trainees are employees ... will depend upon all of the circumstances surrounding their activities on the premises of the employer." Wage & Hour Manual (BNA) 91:416. Wage and Hour Administrator opinions also support this view. "The Court has made it clear that there is no single rule or test for determining whether an individual is an employee, but that the total situation controls. The Court has indicated a number of factors which help to determine whether an employment relationship exists." Op.Wage–Hour Adm'r No. 638 (July 18, 1967).  -

This circuit has no decision on the employee-trainee distinction, but in the analogous situation of distinguishing between an independent contractor and an employee under FLSA this court has held that "no one ... factor[ ] in isolation is dispositive; rather, the test is based upon a totality of the circumstances." *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir.1989); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947). We have also held with respect to this issue that "[i]n determining whether an individual is an 'employee' within the meaning of the FLSA, we must look to the economic realities of the relationship." *Doty v. Elias*, 733 F.2d 720, 722 (10th Cir.1984). Although we recognize that the factors distinguishing employees from independent contractors are different from the factors distinguishing employees from trainees, we find it informative that determinations of employee status under FLSA in other contexts are not subject to rigid tests but rather to consideration of a number of criteria in their totality. *See also Marshall v. Regis Educ. Corp.*, 666 F.2d 1324, 1326–27 (10th Cir.1981) (student resident-hall assistants in college dormitories were not employees under FLSA following totality of circumstances standard of *Rutherford* ).

We are satisfied that the six criteria are relevant but not conclusive to the determination of whether these firefighter trainees were employees under the FLSA, that the interpretation the Secretary urges is unreasonable, and that the district court applied the proper legal standard.

### III

■ We review de novo the district court's application of the legal standard to the facts of the instant case, to determine whether summary judgment in favor of defendant was proper. The parties have agreed on the factual scenario; the essence of their dispute concerns the import of these facts. The district court's decision, a determination of employee status under FLSA, was a conclusion of law even though it depended on an interpretation of the facts.

### A

■ Plaintiff disputes whether the training provided by defendant's academy is similar to the training provided by a vocational school. Plaintiff argues that because the only vocational school in the country using substantially the same curriculum as defendant's academy is located in Orlando, Florida, and because there are no vocational schools for firefighters in Colorado, defendant's academy therefore must not be similar to vocational school. We do not agree. Although defendant did emphasize its own policies and practices, and trained its firefighters using some unusual equipment, it is uncontradicted that defendant's training curriculum overlapped significantly with what would be taught in any fire fighting academy. There are fire fighting academies sponsored by other fire protection districts and private employers throughout the region, as well as associate degree programs at several Colorado community colleges, all of which offer training comparable to defendant's academy. In this respect, defendant's academy is indistinguishable from American Airlines' Learning Center,[1] *see American Airlines*, 686 F.2d

1. American Airlines required its flight attendant and reservation agent trainees to attend its Learning Center for up to five weeks of unpaid instruction. Like defendant here, American screened its applicants extensively and attempted

to train only those individuals it anticipated it could hire at the completion of the course. The Learning Center, like defendant's academy, taught vocational skills transferable within the industry, but strongly emphasized American's

at 269–70, and significantly more substantive than the week-long orientation conducted by the employer in *McLaughlin,* 877 F.2d at 1210. A training program that emphasizes the prospective employer's particular policies is nonetheless comparable to vocational school if the program teaches skills that are fungible within the industry. There is no disagreement that defendant's academy teaches such skills.

### B

Next, we consider whether the training was for the benefit of the trainees, and whether defendant derived an immediate advantage from the activities of the trainees. A number of courts have considered these two factors together, weighing the relative benefits to each party, and we are persuaded that conducting the inquiry in this fashion is both permissible and helpful. *See McLaughlin,* 877 F.2d at 1209–10; *American Airlines,* 686 F.2d at 271–72; *Isaacson v. Penn Community Servs., Inc.,* 450 F.2d 1306, 1309–10 (4th Cir.1971); *Marshall,* 473 F.Supp. at 468–69; *Bailey,* 406 F.Supp. at 1307. In addition, the educational validity of the training program may enter into the calculus of relative benefits. *See McLaughlin,* 877 F.2d at 1210; *Marshall,* 473 F.Supp. at 476.

There is no question but that, in acquiring skills transferable within the industry and required by defendant for its career firefighters, the trainees benefitted from their training. Plaintiff argues, however, that defendant received the greater benefit because the training was in some measure duplicative of skills some trainees already had, defendant tailored the training to meet its particular needs, and trainees incurred costs by participating in the training. Plaintiff also argues that the trainees performed productive work for defendant while they were in training. We have already determined that defendant's academy was educationally valid, and we are not persuaded by the fact that some of the trainees were familiar with portions of the academy curriculum, or that defendant prepared its trainees to operate its equipment

and follow its procedures. Nor is it dispositive that the trainees made financial sacrifices in order to attend the academy. A vocational or associate degree program in fire science would have entailed similar burdens. Furthermore, although we agree that defendant derived an ultimate advantage by creating a pool of prospective employees trained in its operations, this is the intended result of any employer sponsored training program.

As to whether the trainees performed productive work for defendant, the courts have found trainees to be employees when the employers' training consists merely of supervising trainees as they carry out employees' duties. *See McLaughlin,* 877 F.2d at 1210 (training for snack food distribution route driver positions consisted simply of helping a driver service an existing route for one week); *Marshall,* 473 F.Supp. at 473–77 (X-ray technician trainees performed all the duties of regular employees and were minimally supervised by qualified personnel); *Bailey,* 406 F.Supp. at 1307 (apprentice river pilot performed tasks necessary to functioning of pilot boat, with most of his training taking place on his own time). But substantial uncontroverted evidence in the case before us supports the conclusion that defendant was not immediately benefitted by the trainees' activities in this manner. Although the trainees maintained certain equipment and manned a truck near the end of their academy training, these activities were a supervised portion of their training. Trainees did not assume the duties of career firefighters. They were not assigned to shifts; they did not conduct inspections or engage in public education; they did not maintain any equipment other than training equipment. The trainees did perform paramedical services at one accident scene they encountered while returning from a training exercise. However, their response did not obviate the need for qualified firefighters and emergency medical technicians also to respond, and in that respect defendant received no benefit. Insofar as the trainees did perform productive work for defendant during their training,

---

particular practices. Were it not for the larger trainee classes in American's program and the longer training program required by defendant

here, the two cases would be practically indistinguishable.

the benefit to defendant was de minimis. *See Atkins,* 701 F.2d at 1129.

### C

The record is clear that the career firefighter trainees did not displace any current employees. Their maintenance of one of defendant's trucks and their availability to respond to calls near the time their program ended did not relieve any employed firefighter of his or her duties. We recognize that defendant was conducting this academy in order to expand its forces, and that it was replacing volunteers with career firefighters. However, staffing one vehicle with unpaid trainees instead of unpaid volunteers as part of the trainees' preparation for positions as career firefighters did not yield any net benefit to the defendant.

### D

■ As to the last two of the six criteria, the documentary evidence establishes that the trainees fully expected to be hired upon successful completion of their training, but also fully understood that they would not be paid until that time.[2]

We agree with the district court that there is no genuine issue of material fact that prevents summary judgment in this case. Except for one area—the expectation of employment upon successful completion of the course—application of the six factor test indicates that the trainees were not employees. Because that single factor cannot carry the entire weight of an inquiry into the totality of the circumstances, the district court was correct in granting judgment in favor of defendant.

AFFIRMED.

### ORDER

#### May 28, 1993.

After consideration of the Secretary of Labor's petition for rehearing and suggestion for rehearing in banc, the hearing panel is filing this date a revised opinion. Having revised the court's opinion, the hearing panel

---

2. We note, as did the Fifth Circuit, that such an agreement does not constitute a waiver of FLSA benefits, and is "material only insofar as it shows the expectations of trainees." *American Airlines,* 686 F.2d at 269 n. 3. *See Barrentine v. Arkansas–*

denies the Secretary of Labor's petition for rehearing.

The suggestion for rehearing in banc has been submitted to all judges of the court who are in regular active service and will be acted upon at a later date.

---

*Best Freight System,* 450 U.S. 728, 740, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981).