Dear Mr. Eagan,
You have requested the opinion of this office regarding specifics of the internship requirement placed upon applicants for licensure by the State Board of Embalmers and Funeral Directors. Your Executive Director, Ms. Dawn Scardino has by telephone, explained the circumstances as follows: One of the requirements for licensure by the Board is that a person serve as an intern within the state for one year; several funeral homes in the state apparently believe that because these interns are receiving the experience necessary to obtain a license, these interns need not be compensated for the services they render (i.e., the funeral homes feel they do not have to pay their interns minimum wage). As Ms. Scardino explained, the Board would like to know whether it is overstepping its authority by requiring proof from the funeral homes that their interns are "employed" in the sense of being paid at least the minimum wage for the 40 hours per week required.
It is our opinion that the interns are entitled to be compensated for the services rendered to the funeral homes during their internships, and that the Board has the authority to seek from the funeral homes some form of verification that they do indeed employ these interns (i.e., employ on a paying basis).
Rule 3 of the Board's Rules and Regulations reads in pertinent part as follows:
 A. Any person desiring to engage in the practice of embalming and the profession of funeral directing in this state shall serve as an intern within the state of Louisiana for one year and must meet the following requirements:
 1. The intern shall serve his internship within the state of Louisiana for one year under the direct supervision of a Louisiana licensed embalmer/funeral director;
 4. While serving the term of internship, the intern must work on a full-time basis, that is, a minimum of 40 hours per week.
 5. The employment at the funeral home must be the intern's principal occupation;
 6. The employment of the intern at the funeral home must be verified by the state board's inspector during any of the required inspections of the intern. Verification of employment will be made by presenting the quarterly returns submitted either to the Internal Revenue Service or the Louisiana Department of Revenue and Taxation, or, alternatively, some other official form used to verify employment, to the state board's inspector for his review.
The provisions of Rule 3 (B), pertaining to those seeking to engage in the profession of funeral directing only, are substantially the same as to the work requirements of the internship.
The internship application the board uses requires the signature of the intern's supervisor below the statement, "I am serving internship under the following licensed embalmer, and/or funeral director", and above the statement, "I am employed by the ___________ (Funeral Home) _________ (Address) ___________ (City Zip Code) on a full time 40 hour week basis as a _____________ (Funeral Director and/or Embalmer) intern." The intern's supervisor is required to sign documentation to the effect that the intern is being "employed" on a full-time basis.
The Fair Labor Standards Act (29 U.S.C. § 201 et seq.) provides for the payment of the minimum wage by employers to their employees for the services rendered. Therefore the question is whether these interns qualify under the FLSA as "employees" entitled to minimum compensation. 29 U.S.C. § 203 (e)(1) defines "employee" broadly as "any individual employed by an employer." "Employ" in turn is defined as "to suffer or permit to work."29 U.S.C. § 203 (g). An "internship" is not directly addressed by the statute.
A recent U.S. Court of Appeals case addressed the issue of when a trainee, though not specifically an intern, is an "employee" under the FLSA. In Reich v. Parker Fire Protection District, 992 F.2d 1023 (10th Cir. 1993), the court considered whether a "trainee" was an "employee" for purposes of FLSA coverage. The court recognized that "[t]he FLSA itself provides little guidance in distinguishing between trainees and employees." However, the court was guided by the test formulated by the Department of Labor's Wage and Hour Division, setting forth six criteria for determining whether trainees are employees within the meaning of the FLSA. This test provides that whether trainees are employees under the Act depends upon all the circumstances surrounding their activities on the premises of the employer. According to the Wage and Hour Division manual, if all six of the following criteria apply, then the trainees are not employees within the meaning of the Act:
 (1) The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;
 (2) The training is for the benefit of the trainee;
 (3) The trainees do not displace regular employees, but work under close observation;
 (4) The employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;
 (5) The trainees are not necessarily entitled to a job at the completion of the training period;
 (6) The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.
However, the court stated that this test is not to be applied as rigidly as the language of the Department's Wage and Hour Manual suggests. Rather, the court points out that "determinations of employee status under the FLSA in other contexts are not subject to rigid tests but rather to consideration of a number of criteria in their totality."992 F.2d at 1027. The court concluded that "the six criteria are relevant but not conclusive to the determination of whether . . . trainees [are] employees under the FLSA" and thus entitled to be paid at least the minimum wage. Id.
Under the particular facts of Reich, firefighter trainees were held to not be employees subject to coverage by the FLSA. The trainees' curriculum overlapped significantly with what would be taught in any fire fighting academy. The trainees, in acquiring skills transferable within the industry and required by the defendant for its career firefighters, benefitted from their training. On the other hand, the fire department did not benefit immediately from the trainees' activities since the trainees did not assume the duties of career firefighters. Nor did the trainees displace any current employees. Finally, even though the trainees fully expected to be hired upon successful completion of their training, they also fully understood that they would not be paid until that time.
Under the facts as established by your opinion request and information provided by Ms. Scardino, as well as the requirements for the internship under Rule 3, the stronger argument is that these interns are "employees" for purposes of the Fair Labor Standards Act, and thus entitled to be paid at least the minimum wage. The instruction that the intern receives in the employ of the funeral home is not what could otherwise be received in a vocational school. The embalming/funeral directing intern is required to participate in the preparation of at least 25 human bodies during his period of internship and actively assist in conducting at least 25 funerals during the period of internship. Obviously, this is practical experience which could not be obtained in a classroom setting.
Furthermore, a minimum amount of schooling is required of the applicant in addition to the internship. LSA-R.S. 37:842 (A) requires that the applicant for licensure as a funeral director complete, in addition to the one year internship, at least thirty semester hours, or the equivalent thereto, in an accredited college or university. Rule 3 sets forth the subject areas which must be covered in these minimum subject hours. Section 842 (B) requires that the applicant for licensure as an embalmer and funeral director, in addition to the internship, complete a full course of not less than twelve full months in the science of embalming at an accredited school of mortuary science. Clearly, the internship does not and indeed cannot provide training that would otherwise be obtainable in the classroom.
The interns naturally receive a benefit from the training received, not only in terms of practical experience, but also in that the internship is a requirement for licensure. However, the funeral homes also receive a direct and immediate benefit from the services performed by the interns, namely direct assistance in both the preparation of bodies and the conducting of funerals. These are services that would otherwise have to be compensated if performed directly by the intern's supervisor or by regular employees of the funeral home.
Although there is no indication in the internship application or elsewhere that the interns are entitled to permanent employment at the completion of the internship and licensure, or that the interns should have this subjective belief, there is reason to find, based upon the terms in the Board's Rules and Regulations and in the internship application (which both the intern and the funeral home supervisor must sign) that the intern is entitled to expect compensation. Rule 3 requires the intern to work on a full-time (40 hour week) basis, and further, "employment at the funeral home must be the intern's principal occupation."
Black's Law Dictionary, 4th Edition, defines "occupation" in part as "whatever one follows as the means of making a livelihood." The entry in Black's for "employ" reads in pertinent part as follows:
 [W]hen used in respect to a servant or hired laborer, the term is equivalent to hiring, which implies a request and a contract for a compensation, and has but this one meaning when used in the ordinary affairs and business of life.
Based on the foregoing, it is the opinion of this office that embalming/funeral directing interns are "employees" for purposes of the Fair Labor Standards Act and thus are entitled to be compensated for the services they render to the funeral homes in the course of their internships.
As to the question of whether it is within the scope of the Board's authority to demand verification of the interns' employment from the funeral homes, LSA-R.S. 37:840 sets forth the powers and duties of the Board. Section 840 (A)(1) provides that the Board is empowered to "[make] reasonable rules and regulations for the administration and enforcement of the provisions of this chapter." This would seem to include the provisions for the verification of the intern's employment by the funeral home contained in Rule 3 (A)(6) and Rule 3 (B)(6). Section 840 (A)(4) further empowers the Board to:
 [Hold] . . . such hearings and . . . [make] . . . such investigations as may be found necessary in carrying out the purposes and intent of this Chapter, with the right to subpoena licensees, their records, books and accounts and others from whom information is needed . . .
Certainly this authority is broad enough to extend to requiring funeral homes to provide some form of verification that they and the interns they employ are meeting the requirements of the internship rules.
I hope that this adequately answers your request. If you require any further assistance, please do not hesitate to contact this office.
Sincerely,
 Richard P. Ieyoub Attorney General
 By: Roy A. Mongrue, Jr. Assistant Attorney General