**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
United States Court of Appeals
Tenth Circuit

**November 9, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

RHONDA NESBITT, individually, and on
behalf of all others similarly situated,

     Plaintiff - Appellant,

v.

FCNH, INC.; VIRGINIA MASSAGE
THERAPY, INC.; MID-ATLANTIC
MASSAGE THERAPY, INC.; STEINER
EDUCATION GROUP, INC.; STEINER
LEISURE LTD.; SEG CORT LLC, d/b/a
Steiner Education Group,

     Defendants - Appellees,

and

NATIONAL EMPLOYMENT LAWYERS
ASSOCIATION AND
ECONOMICS/BUSINESS PROFESSORS
(WILLIAM H. KAEMPFER, NADELLE
GROSSMAN, PAULA COLE, and
MIRIAM CHERRY),

     Amici Curiae.

No. 17-1084

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-00990-RBJ)**
_____

David H. Miller (and Adam Harrison of Sawaya & Miller Law Firm, on the briefs),
Denver, Colorado, for Plaintiff - Appellant.

Todd Wozniak of Greenberg, Traurig, L.L.P., Atlanta, Georgia (and Jeffrey M. Lippa of Greenberg, Traurig, L.L.P., Denver, Colorado, with him on the brief), for Defendants - Appellees.

Scott A. Moss of Moss Law Practice and Hunter A. Swain of King & Greisen, L.L.P., Denver, Colorado, for Amici Curiae.

_____

Before **McHUGH**, **KELLY**, and **MORITZ**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Plaintiff-Appellant Rhonda Nesbitt is a former massage therapy student who attended a for-profit vocational school operated by Defendants-Appellees ("Steiner"). Ms. Nesbitt, on behalf of a class of former students, brought suit claiming the students qualified as employees of Steiner under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and alleging Steiner violated the FLSA by failing to pay minimum wage. The district court granted summary judgment in favor of Steiner, holding that the students were not employees of the schools under the FLSA. See Nesbitt v. FCNH, Inc., 217 F. Supp. 3d 1288, 1298 (D. Colo. 2016). Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

**Background**

Steiner operated for-profit vocational schools in multiple states. 1 Aplt. App. 6–7; 2 Aplt. App. 129. Steiner schools' curriculum included classroom and clinical education required for one to become licensed as a massage therapist. 2 Aplt. App. 130–31. The

clinical component included approximately 100, fifty-minute massages, which counted toward the minimum clinical hours necessary for students to acquire their state licenses. Id. at 131–32. The massages were performed at Steiner facilities on members of the public, who paid discounted rates for the massages. Id. at 132. Because the Steiner facilities did not have rooms dedicated to massage training, the students would clear classrooms of desks and chairs and erect massage tables surrounded by privacy curtains for clinical training. 4 Aplt. App. 474–75, 482–83. Each student would lead his or her client to a booth that included a massage table and chair with enough space for the student to make a circuit around the massage table and perform the massage. Id. at 475–76. While the massages took place, there ostensibly were clinic managers and teaching assistants on site to supervise the students and provide feedback on their massages. 2 Aplt. App. 131–32. In theory, these supervisors were available to answer questions from students and to facilitate the clinic's operations. Id. The parties dispute the extent to which these supervisors actually provided feedback or answered questions during the clinic.[1] Compare Aplt. Br. at 24–26, with Aplee. Br. at 24–26. After the students

---

[1] This is one of many factual issues about which the parties disagree. While Steiner alleges the supervisors were available to answer questions from students and observe students' work, Ms. Nesbitt contends the opposite. Ms. Nesbitt alleges that the students were told they were never to leave their stations (thus precluding them from seeking guidance), and that the supervisors did not observe the students' work because the students were required to keep their privacy curtains drawn throughout the massages (thus precluding any observation). See Aplt. Br. at 21–22, 24–26. Ultimately, it is unnecessary to resolve these factual disputes about the efficacy of Steiner's supervision and observation. As we discuss below, the other factors we consider and the nature of this arrangement compel a conclusion that Ms. Nesbitt and the class she seeks to represent were not employees, they were students on the path to a career.

completed their massages, the clients were asked to provide feedback on the massages they received, id. at 132, though the parties dispute how often these clients actually completed their feedback forms and how often feedback was given to students. Compare Aplt. Br. at 28, with Aplee. Br. at 27. Following each massage, students would lead their client out and prepare their workspace for the next client. See, e.g., 4 Aplt. App. 438, 442–43, 447. They would typically repeat this process for five clients each clinical day. See, e.g., id. at 443, 447, 454. Ms. Nesbitt alleges Steiner profited from the clinics with the students as free labor. Aplt. Br. at 31.

Rhonda Nesbitt brought her class-action suit under the FLSA in the District of Colorado on April 7, 2014.[2] 1 Aplt. App. 1. Steiner moved to compel arbitration of the claims and to prohibit litigation of the issues as a class. Id. at 39–53. The district court denied that motion, Nesbitt v. FCNH, Inc., 74 F. Supp. 3d 1366, 1375 (D. Colo. 2014), and this court affirmed. Nesbitt v. FCNH, Inc., 811 F.3d 371, 381 (10th Cir. 2016).

On remand, the district court addressed the issue of whether Ms. Nesbitt and the students she seeks to represent qualified as employees under the FLSA. The district court found they did not. Nesbitt, 217 F. Supp. 3d at 1298. The district court determined that the six factors announced in Reich v. Parker Fire Protection District, 992 F.2d 1023 (10th Cir. 1993), when considered in their totality, resulted in a finding that the students were not employees of Steiner. Nesbitt, 217 F. Supp. 3d at 1294. The district court came to

---

[2] In addition to her FLSA claim, Ms. Nesbitt brought a number of state-law claims not at issue on appeal. The district court dismissed the state-law claims, concluding that this court's decision on Ms. Nesbitt's FLSA claim would be dispositive. 9 Aplt. App. 834–35.

that conclusion because (1) the students received vocational training from Steiner, (2) the training primarily benefited the students because they were required to complete hours of clinical time for their licenses, (3) the students did not displace regular employees and worked under supervision of Steiner instructors, (4) there was no genuine issue of material fact regarding the profit Steiner made from operating its schools, (5) the students were not entitled to employment upon completion of their training, and (6) the students and Steiner both understood that the students were not entitled to wages during their time spent training. See id. at 1294–98. Accordingly, the district court granted summary judgment in favor of Steiner on the question of Ms. Nesbitt's FLSA claim. Id. at 1298; see also Nesbitt v. FCNH, Inc., No. 14-cv-00990-RBJ, 2017 WL 916453 (D. Colo. Mar. 2, 2017). This appeal followed.

**Discussion**

We review a district court's grant of summary judgment de novo. Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015). The legal determination whether an individual is an "employee" under the FLSA is also reviewed de novo. Reich, 992 F.2d at 1025.

The FLSA requires that — subject to certain exceptions — every employer pay its employees a specified minimum wage and time-and-a-half for hours worked over forty in a workweek. See 29 U.S.C. §§ 206–207. The FLSA defines an employee as "any individual employed by an employer." Id. § 203(e)(1). In 1947, the Supreme Court distinguished between employees, who are entitled to wages under the FLSA, and

5

trainees, who usually are not. See Walling v. Portland Terminal Co., 330 U.S. 148, 153 (1947). In that case, the Court held that prospective railroad brakemen who received on-the-job training, but were not paid during the training period, were not entitled to wages under the FLSA. Id. From Portland Terminal, the Department of Labor (DOL) developed a six-part test for determining whether trainees qualified as employees under the FLSA,[3] and we adopted that test in part in Reich v. Parker Fire Protection District, 992 F.2d 1023 (10th Cir. 1993).

Under Reich, a court assesses: (1) whether the training received is similar to that which would be given in a vocational school; (2) whether the training is for the benefit of the trainee or the employer; (3) whether the trainees displace regular employees, or rather work under close observation or supervision; (4) whether the employer that provides the training derives an immediate advantage from the activities of the trainees; (5) whether the trainees are necessarily entitled to a job at the completion of their training period; and (6) whether the employer and trainees understand that the trainees are not entitled to wages for the time they spend in training. See id. at 1026. These six criteria are all

_____

[3] On January 5, 2018, the Department of Labor announced that it was abandoning its six-factor test in favor of the more flexible "primary beneficiary" test. See News Release, U.S. Dep't of Labor, U.S. Department of Labor Clarifies When Interns Working at For-Profit Employers Are Subject to the Fair Labor Standards Act (Jan. 5, 2018), https://www.dol.gov/newsroom/releases/whd/whd20180105; see also U.S. Dep't of Labor, Fact Sheet #71: Internship Programs Under the Fair Labor Standards Act (Jan. 2018), https://www.dol.gov/whd/regs/compliance/whdfs71.pdf. As we have said before, however, we consider the DOL's interpretation of the FLSA embodied in its nonregulatory guidelines merely for its persuasive authority under Skidmore v. Swift & Co., 323 U.S. 134 (1944). See Reich, 992 F.2d at 1026–27; cf. United States v. Mead Corp., 533 U.S. 218 (2001).

relevant but not conclusive to the determination whether a trainee is an employee — the determination must be made under the totality of the circumstances and no one factor is dispositive. Id. at 1026–27.

The district court applied Reich and it determined that Ms. Nesbitt and the other students were not employees. See Nesbitt, 217 F. Supp. 3d at 1294–98. On appeal, Ms. Nesbitt first argues that the district court erred when it applied Reich as the governing framework. She contends that the court should have applied the test in Marshall v. Regis Educational Corp., 666 F.2d 1324 (10th Cir. 1981), where the court held, after looking at the totality of the circumstances, that student resident hall assistants working for a college were not employees under the FLSA. Id. at 1328. According to Ms. Nesbitt, Regis Educational Corp. specifically addresses whether students working for a school are employees by looking at the full educational context, rather than looking at an exclusive set of factors.

At the district court, it does not appear that Ms. Nesbitt contended that Regis Educational Corp. constitutes a stand-alone test distinct from Reich. See generally 4 Aplt. App. 336–55. Regardless, Regis Educational Corp. is merely another application of the totality of the circumstances test first articulated in Portland Terminal and later relied upon in Reich to examine the economic reality of the relationship between the entity providing training and the plaintiffs.

Ms. Nesbitt next invites us to apply the "primary beneficiary" test set forth by the Second Circuit in Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir. 2015), a case involving unpaid college interns, not a mandatory clinical training program leading

7

to a state-licensed profession.[4]  We see no need to do so given the breadth of our test,

which relies on the totality of the circumstances and accounts for the economic reality of

the situation.[5]  As the district court stated:

> I have found that at least four and arguably more of the six Reich factors
> suggest that plaintiffs were not defendants' employees.  But at bottom I look
> at the "totality of the circumstances" and of the "entirety of the economic
> realities" of the parties' relationship.  Put another way, I look at the forest,
> not just the trees.

Nesbitt, 217 F. Supp. 3d at 1298.  Indeed, even if we were inclined to adopt Glatt,

"[u]nder the doctrine of stare decisis, this panel cannot overturn the decision of another

panel of this court."  United States v. Meyers, 200 F.3d 715, 720 (10th Cir. 2000).  Reich

remains applicable here.

Finally, Ms. Nesbitt argues that even if Reich is the correct test, the district court

erred in its application of the Reich factors and its assessment of the totality of the

circumstances.  She primarily focuses on two factors from the Reich test: the adequacy of

the observation and supervision provided by Steiner over the students, and the profit

Steiner allegedly received from having students perform massages without pay.

First, Ms. Nesbitt and Steiner disagree about the level of supervision and

observation required under Reich.  Ms. Nesbitt argues that merely having an instructor on

---

[4]  To date, four circuits have adopted the primary beneficiary test.  See Benjamin v. B&H
Educ., Inc., 877 F.3d 1139 (9th Cir. 2017); Schumann v. Collier Anesthesia, P.A., 803
F.3d 1199 (11th Cir. 2015); Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir.
2015); Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518 (6th Cir. 2011).
[5]  See Robert J. Tepper & Matthew P. Holt, Unpaid Internships: Free Labor or Valuable
Learning Experience?, 2015 BYU Educ. & L.J. 323, 334–35 (suggesting that such an
analysis is required by Supreme Court precedent).

premises during the clinics is not sufficient to satisfy Reich's "close observation" factor. Aplt. Br. at 56–61. In particular, she alleges that the students were unable to leave their posts to seek guidance from clinical instructors and that the instructors on premises never *actually* observed students during their massages — making the supervisors' physical presence illusory. Id. Steiner counters that it has always satisfied state supervision requirements for clinical instruction, and that the supervision here is sufficient. Aplee. Br. at 48–49; 54–55. Whatever the minimal supervision necessary to mark one's status as a trainee may be, and recognizing that the facts here were controverted, we can say that floor was met. The "close supervision" factor is meant to distinguish between regular employees and trainees. At no time did the students function as regular employees; they were students learning a trade on vocational school premises. The presence of supervisory licensed massage therapists and teaching assistants to oversee them sets this case apart from situations where students all but carried out the duties of regular employees. In any event, given a totality of the circumstances test, the presence of some supervision when combined with the other factors weighs in favor of finding that the students were trainees. Moreover, there is no need for each and every one of the six factors to point toward the same outcome. See Reich, 992 F.2d at 1029 (noting that one of the six factors pointed toward a finding the plaintiffs were employees, but holding that a single factor cannot carry the weight under a totality inquiry).

Second, Ms. Nesbitt argues that Steiner — not the students — was the primary beneficiary of their arrangement. According to Ms. Nesbitt, Steiner was able to profit from an unpaid workforce while the students were left with almost no beneficial training.

9

See Aplt. Br. at 56–58, 61–62.  However, the hours students spent performing massages as part of their Steiner curriculum allowed them to advance toward their minimum licensing requirements and provided them an obvious benefit.  For example, in order to receive her Colorado license, Ms. Nesbitt was required to graduate from an accredited massage therapy school with a combined 500 hours of classroom and clinical training, and Steiner's 100-hour minimum clinical requirement clearly provided her a material benefit.  See Colo. Rev. Stat. § 12-35.5-107.  This is true regardless of the profit, if any,[6] that Steiner may have made from the students' unpaid work.  We agree with the district court that "the clinics had an obvious benefit for [the students]."  Nesbitt, 217 F. Supp. 3d at 1295.

The other factors also weigh in favor of finding that the students were trainees, not employees.  First, we agree with the district court that the training received by the students was similar to training in vocational school because their training was "literally 'vocational school' training."  Id. at 1294.  Ms. Nesbitt and the other students were required to complete a minimum number of clinical hours to acquire their state licenses.  The training they received at Steiner schools was instrumental to that goal, and the classroom and clinical components prepared them to be massage therapists.  This distinguishes Ms. Nesbitt's case from her preferred comparison Glatt, where the unpaid interns in question alleged they replaced paid employees and any training received was

---

[6]  Steiner, for its part, asserts it made no profit from the operation of the massage therapy program given its overhead and other operational costs.  See Aplee. Br. at 27–28; see also 2 Aplt. App. 133.

10

unrelated to their formal education. Cf. Glatt, 811 F.3d at 532–33, 535–36. Second, we agree with the district court that the students clearly were not entitled to a job upon completion of their program with Steiner. Nesbitt, 217 F. Supp. 3d at 1298. Students were aware that Steiner operated schools, not massage therapy businesses, and therefore there could not be any expectation of full-time employment following completion of their training. Steiner was not an employer of massage therapists, and after the students completed their educational program they would have to seek employment elsewhere. And finally, we agree with the district court that both the students and Steiner understood that the students were not entitled to wages for their time spent training. Id. Not only did the students receive and sign enrollment agreements that confirmed they were enrolling in vocational programs that would not provide them with wages, 2 Aplt. App. 150–51, but it would be *illegal* to pay the unlicensed students a wage before they completed their training and state licensing requirements. See Nesbitt, 217 F. Supp. 3d at 1298; see, e.g., Colo. Rev. Stat. §§ 12-35.5-106, 12-35.5-115. Given that background, there can be no doubt the students understood they were entering an educational program that would not entitle them to wages.

For the foregoing reasons, the district court did not err when it found that Ms. Nesbitt and the students she seeks to represent are not employees of Steiner under the FLSA.

AFFIRMED. The motion of the National Employment Lawyers Association et al. for leave to file a brief as amici curiae is GRANTED.

11